**UNITED STATES of America, Appellee,**

v.

**Steve RICHARDS, Appellant.**

No. 83–5189.

United States Court of Appeals,
Fourth Circuit.

Argued May 11, 1984.

Decided July 3, 1984.

Stanley Feldman, Phoenix, Ariz. (William U. Burke, Murray & Burke, S.C., Milwaukee, Wis., on brief), for appellant.

Kathleen A. Felton, Dept. of Justice, Washington, D.C. (Henry Dargan McMaster, U.S. Atty., Columbia, S.C., on brief), for appellee.

Before WINTER, Chief Judge, CHAPMAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Defendant appeals from his judgment of conviction for conspiring to possess with intent to distribute more than 1000 pounds of marijuana in violation of 21 U.S.C. § 846. He argues that there was insufficient evidence that he participated in a conspiracy of this magnitude, that the statute under which he was sentenced to nine

years' imprisonment, 21 U.S.C. § 841(b)(6), offends equal protection · principles, and that the district court erred in denying his motion for recusal. Seeing no merit in any of defendant's contentions, we affirm.

## I.

We first address the question of the sufficiency of the evidence. The evidence at trial demonstrated that two government agents posing as sellers in Charleston, South Carolina, agreed to sell 2000 pounds of marijuana to three men—Jordan, Fioretti, and Wiggen, a friend of the defendant's. Wiggen subsequently called the defendant in Wisconsin to tell him that he had "checked things out", that the marijuana was good, and that the defendant should bring as much money as possible to Charleston. The defendant then arrived with $180,000, a sum sufficient to purchase approximately 560 pounds. Before he could purchase any of the drug, defendant was arrested along with Wiggen and others.

█ Defendant argues that he was only part of a conspiracy to distribute the 560 pounds he had the money to purchase, not the larger conspiracy to distribute the 2000 pounds the government agents offered for sale. His argument, however, is unpersuasive. The question of whether an individual narcotics buyer is part of a conspiracy to distribute more drugs than he actually is prepared to purchase turns on his knowledge of any larger conspiracy. See United States v. Burman, 584 F.2d 1354 (4 Cir. 1978); United States v. DeNoia, 451 F.2d 979 (2 Cir.1971). Thus, in Burman, we concluded that each buyer was part of the larger conspiracy because "from the nature of the contraband [heroin] and the vastness and regularity of their own dealings, each reasonably knew that smuggling and various other illegal transactions were required to make their own dealings possible." 451 F.2d at 1356.

█ In this case, of course, the defendant had had no regular dealings with the government agents. But, even a single transaction may draw one into a larger conspiracy to violate the narcotics laws if "there [is] independent evidence ... that the defendant ... had some knowledge of the broader conspiracy, or the single act itself [is] one from which such knowledge may be inferred." United States v. DeNoia, 451 F.2d at 981. Here there was ample evidence that the defendant knew of the larger conspiracy ·to sell more than 1000 pounds of marijuana. Wiggen had told him to bring as much money as he could, clearly indicating that he could buy as much marijuana as he wanted. Further, Wiggen, Fioretti, and Agent Greagor all testified that the defendant participated in a conversation that made it clear that the deal involved a 2000-pound load of marijuana.

## II.

Defendant also contends that the statute under which he was sentenced is constitutionally infirm. The statute provides:

In the case of a violation of subsection (a) of this section involving a quantity of marihuana exceeding 1,000 pounds, such person shall be sentenced to a term of imprisonment of not more than 15 years, and in addition, may be fined not more than $125,000. If any person commits such a violation after one or more prior convictions of such person for an offense punishable under paragraph (1) of this paragraph, or for a felony under any other provision of this subchapter, subchapter II of this chapter, or other law of the United States relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment of not more· than 30 years, and in addition, may be fined not more than $250,000.

21 U.S.C. § 841(b)(6). It clearly imposes a much stiffer penalty for trafficking in more than 1000 pounds of marijuana than for trafficking in other non-narcotic controlled substances that have a high potential for abuse and no currently accepted medical use. (Schedule I drugs). See 21 U.S.C. §§ 812 & 814(b)(1)(B). Trafficking

in other such drugs carries a maximum sentence of only five years and $15,000. Although the maximum prison sentence in § 841(b)(6) matches that for trafficking in heroin, the maximum fine exceeds that applicable to those convicted of trafficking in heroin. *Cf.* 21 U.S.C. § 841(b)(1)(A).

Defendant argues that § 841(b)(6) thus discriminates against marijuana offenders vis-a-vis drug offenders involved with substances of comparable or greater danger (other non-narcotic Schedule I drugs or narcotic Schedule I drugs such as heroin). This discrimination, he claims, denies him equal protection of the laws because it is unreasonable to treat the two classes differently. We disagree.

■ As defendant notes, the test of equal protection validity regarding this type of legislation is "whether the classifications drawn in [the] statute are reasonable in light of its purpose." *McLaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); *accord New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). A court does not concern itself as to whether the legislature made a correct judgment, but only whether it made a rational one. In other words, the test of constitutional validity is whether the legislature rationally could have decided that the classification would further the statutory purpose. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981).

■ Applying these principles, we conclude that § 841(b)(6) does not violate the equal protection principles implicit in the fifth amendment. The declared purpose of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.,* is to protect the public health and welfare, and the legislative history of § 841(b)(6) indicates that that subsection was designed "to deter individuals and major criminal organizations involved in extensive [marijuana] trafficking opera-

tions." Sen.Rep. No. 96–916, 96th Cong., 2d Sess. 14, *reprinted in* 1980 U.S.Code Cong. & Ad.News 2858, 2871. At the time the legislation was passed, such operations posed, in the estimation of Congress, a "grave" public health threat and represented an intractable problem because "the financial benefits of large scale marijuana trafficking [were] so lucrative that [then] current sanctions [were] viewed as an acceptable cost of doing business." *Id.* The decision to treat marijuana trafficking differently from trafficking in other non-narcotic Schedule I drugs was reasonable in light of common knowledge that, being more widespread, it posed a greater threat to public health.

The decision to treat trafficking in marijuana more harshly than trafficking in heroin also is a rational one. Congress could have concluded that extensive marijuana operations posed an even greater threat to the public health and welfare than heroin trafficking operations, reasoning that using marijuana is only the first step in becoming involved with more dangerous drugs, like heroin, and that marijuana was more likely to ensnare those who did not yet have drug problems. Also, it is well settled that the legislature may choose to attack a problem one step at a time. *New Orleans v. Duke,* 427 U.S. at 305, 96 S.Ct. at 2517. Accordingly, we think that § 841(b)(6) passes constitutional muster, because the decision to single out marijuana traffickers for especially harsh penalties has the rational basis of protecting the public health by attacking the most pressing danger with the stiffest penalties.[1]

### III.

■ Defendant's final argument is that the district court erred in denying his motion for recusal. After the jury returned its verdict, the defense filed a motion under 28 U.S.C. § 144, asking the dis-

---

1. Defendant also complains that the decision to use 1000 pounds of marijuana as the cut-off point was arbitrary. It seems clear, however, that it was not more arbitrary than any other line-drawing exercise. It certainly does not

seem patently unreasonable to treat trafficking in amounts greater than 1000 pounds considerably more harshly than trafficking in lesser amounts.

trict judge to recuse himself from any further proceedings in connection with the case. Recusal is required under § 144 when a party "makes and files a timely and sufficient affidavit that the judge has a *personal bias* or prejudice either against him or in favor of any adverse party." (emphasis added). Defendant maintains that he filed a sufficient affidavit alleging personal bias when he claimed that the judge "has established, in marijuana cases, certain minimum sentences" and that he "[is] determined to wipe out marijuana offenses through sentencing." These allegations seem to summarize fairly the district court's post-verdict remarks to the jury:

> Because I have established, say, in marijuana cases, a certain minimum sentence. And I don't like it. But at least in this area, different from Florida and New York, Judge Hawkins and I are determined we are going to wipe it out ... but I have established a policy that if somebody who is a truck driver, for instance, or who is an unloader, and with no previous history of marijuana crime is going to get a certain amount .... And we are trying to stop it, Judge Hawkins and I here in Charleston, by meting out sentences that people will stay away from Charleston.

Nevertheless, recusal was not required. Although there is some authority for the proposition that a judge committed to a mechanical sentencing policy for defendants found guilty of particular offenses is personally biased against that class and should recuse himself from sentencing proceedings for that class of defendants, *United-ed States v. Thompson*, 483 F.2d 527 (3 Cir.1973) (split decision), we think the better position is that such bias is judicial, not personal, since it does not stem from an extra-judicial source. *United States v. Serrano*, 607 F.2d 1145, 1150 (5 Cir.1979); *United States v. Thompson*, 483 F.2d at 530 (Adams, J. dissenting).

Furthermore, even if the affidavit in this case had been sufficient to allege personal bias and thus require recusal, any error in denying the motion for recusal was harmless. At the actual sentencing, the district judge clearly did not follow a mechanical sentencing policy. Rather, he noted a variety of individualized considerations that prompted him to impose a nine-year sentence—six years less than the statutory maximum.[2]

Because the defendant has not established that he was the victim of a mechanical sentencing policy, he has no standing to raise the claim that the policy denies equal protection to other persons convicted of marijuana offenses in South Carolina.

AFFIRMED.

---

**2.** Accordingly, the defendant also is not entitled to resentencing under the line of cases holding that it is error for a court to follow a rigid sentencing policy based only on the crime committed because such an approach represents an abdication of the court's responsibility to exercise discretion in sentencing. *See, e.g., United States v. Hartford,* 489 F.2d 652 (5 Cir.1974).