**UNITED STATES of America**

v.

**GIBBS, Stephen a/k/a "Jake".**

**Appeal of Stephen GIBBS.**

No. 86–1370.

United States Court of Appeals, Third Circuit.

Argued Dec. 3, 1986.

Decided March 2, 1987.

Rehearing and Rehearing In Banc Denied March 27, 1987.

Martin G. Weinberg (argued), Lillian A. Wilmore, Oteri, Weinberg & Lawson, Boston, Mass., Thomas Colas Carroll, Carroll & Carroll, Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty, Chief of Appeals, Seth Weber (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before ALDISERT, Chief Judge, and WEIS and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

This appeal requires us to consider whether the defendant's indictment for fed-

eral narcotics violations under 21 U.S.C. § 846 and § 841(a) provided him with notice to support the imposition of an enhanced penalty provision under § 841(b)(6) for possession with intent to distribute in excess of 1,000 pounds of marijuana. We conclude that 21 U.S.C. § 841(b)(6) is an enhanced penalty provision and not a separate crime. We find that the indictment at issue put the defendant Stephen Gibbs on notice of the possibility that an enhanced sentence might be imposed. Accordingly, we will affirm the judgment of the district court.

## I.

In 1981 the defendant Stephen Gibbs and five others were charged with conspiracy (in violation of 21 U.S.C. § 846) to distribute and possess with intent to distribute marijuana (in violation of 21 U.S.C. § 841(a)(1)). Although the indictment contained three counts, Gibbs was charged in only one count of the indictment. Gibbs was subsequently convicted of a conspiracy to violate the federal narcotics laws, namely 21 U.S.C. § 841(a)(1) which provides:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; 21 U.S.C. § 841(a)(1).

Pursuant to the Penalties provisions of § 841, Gibbs was sentenced under § 841(b)(6), which provides in relevant part:

(6) In the case of a violation of subsection (a) of this section involving a quantity of marihuana exceeding 1,000 pounds, such person shall be sentenced to a term of imprisonment of not more than 15

years, and in addition, may be fined not more than $125,000....

21 U.S.C. § 841(b)(6) (1982). Gibbs' sentence was for a period of ten years imprisonment, which is greater than the regular sentence which may be imposed for a marijuana violation.[1]

Gibbs' initial appeal, which challenged the prerequisites for the admission into evidence of co-conspirator testimony and asserted that the introduction of that testimony violated his sixth amendment right to confront and cross-examine witnesses, was heard by a panel of this court, which reversed his conviction on March 22, 1983. On the government's petition for rehearing *in banc*, we reinstated Gibbs' conviction. *United States v. Gibbs*, 739 F.2d 838 (3d Cir.1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985) (*"Gibbs I"*). Gibbs' petition for rehearing *in banc* was denied.

Gibbs subsequently filed a Motion to Correct Illegal Sentence and a Motion to Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255. The district court denied the Motion to Correct Illegal Sentence, denied the claims pursuant to 28 U.S.C. § 2255 relating to the sentence, and held in abeyance the claim relating to ineffective assistance of counsel. This appeal followed.

## II.

■ Gibbs now asserts on appeal that imposition of the enhanced penalty violates the *ex post facto* clause of the Constitution, and that the evidence at trial was insufficient to support his sentence. Gibbs primarily contests, however, the sufficiency of the indictment to support the imposition of the enhanced penalty under § 841(b)(6).

---

1. Gibbs was sentenced on February 8, 1982. Section 841(b)(6) was repealed on October 12, 1984, Pub.L. 98–473, Tit. II, § 502(5). The current statute provides that:

(B) In the case of a controlled substance in schedule I or II except as provided in subparagraphs (A) and (C), such person shall be sentenced to a term of imprisonment of not more than 15 years; a fine of not more than $125,000, or both....

(C) In the case of less than 50 kilograms of marijuana ... such person shall ... be sentenced to a term of imprisonment of not more than 5 years, a fine of not more than $50,000 or both.

21 U.S.C. § 841(b)(1)(C) (1986). Thus Congress has expanded the potential for an enhanced penalty for violations of § 841(a) from one involving in excess of 1,000 pounds of marijuana, to one involving in excess of 50 kilograms of marijuana (approximately 110 pounds).

We turn first to the issue involving the indictment.

The final paragraphs of Count One of the indictment read:

(e) On or about October 5, 1980, the defendant Joseph Quintiliano had a telephone conversation with the defendant Stephen Gibbs to arrange for Gibbs to purchase the plane-load of marijuana.

(f) In or about about the early morning of October 6, 1980, because of a shortage of fuel, the defendant Prentiss C. Breland landed the Beechcraft Queen Air airplane at an airport near Boca Raton, Florida, with 1,487 pounds of marijuana.

Gibbs argues that because the indictment did not specifically charge him with either conspiracy to possess an amount of marijuana in excess of 1,000 pounds, or with a violation of 21 U.S.C. § 841(b)(6), imposition of the enhanced penalty under § 841(b)(6) is impermissible. He contends that the amount of marijuana is an essential element of the offense with which he was charged and that failure to charge him with that element denied him fair notice in preparing and presenting his defenses. In addition, Gibbs argues that the issue of the quantity of the marijuana must be submitted to the jury and must be proved beyond a reasonable doubt.

The government contends that § 841(b)(6) is simply an enhanced penalty provision and not an element of the crime. The prosecution argues, therefore, that the defendant is not entitled to notice in the indictment that a heavier sentence may be imposed. In the alternative, the government contends that because the indictment specified that 1,487 pounds of marijuana were in the plane, the defendant *was* on notice that he was subject to the heavier penalties of § 841(b)(6).

Our standard of review concerning the adequacy of the indictment to support the enhanced penalty is plenary as this involves an issue of law. *See United States v. Adams,* 759 F.2d 1099 (3d Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985). As we noted in *United States v. Sebetich,* 776 F.2d 412 (3d Cir.

1985), an indictment provides satisfactory protection to a defendant if it fairly informs him of the charge and enables him to plead acquittal or conviction in bar of future prosecutions for the same offense.

Our task here is to determine whether sufficient notice for such protection was given in the indictment filed in this case. Although the indictment did not specifically mention § 841(b)(6), we find that the indictment *as a whole* fairly informed Gibbs of the amount of marijuana with which he was charged pursuant to § 841(a)(1), and which would subject him to the enhanced penalty provision of § 841(b)(6). Because we conclude that Gibbs did receive notice, we need not, and do not, decide whether the enhanced sentence could stand in the absence of notice in the indictment. We do, however, agree with the government's position that § 841(b)(6) is a penalty enhancement provision and not a separate crime. That specific issue has divided the courts of appeals.

In *United States v. Normandeau,* 800 F.2d 953 (9th Cir.1986), the appellants contended that knowledge of the amount of marijuana involved is an element of the aggravated offense. In holding that contention invalid and in finding that § 841(b)(6) is merely a penalty provision, the Court of Appeals for the Ninth Circuit concluded that

[P]roof that an accused knew how much marijuana was involved is not an element of a section 841(a) offense. Through their involvement in the illegal transaction, defendants assumed the risk of enhanced penalties if the government could show that their offense involved more than 1,000 pounds of marijuana.

*Normandeau,* 800 F.2d at 956. The court declined to decide the issue of whether the indictment must allege that more than 1,000 pounds of marijuana is involved before increased penalties could be sought, finding that the indictment before it clearly alleged that more than 1,000 pounds was involved and cited § 841(b)(6).

Similarly, the Court of Appeals for the First Circuit has held that proof of the amount of marijuana is an essential ele-

ment only under § 841(b)(6). *United States v. McHugh,* 769 F.2d 860 (1st Cir. 1985). There, the court pointed out that neither § 841(a) nor § 846 (the general conspiracy section) requires any specific quantity for conviction. Section 841(b) merely specifies the penalties for violations of § 841(a), depending on the substance and quantity involved.

That § 841(b)(6) is a penalty which was intended to apply to conspiracies as well as to actual possession was explained in *United States v. Wright,* 742 F.2d 1215 (9th Cir.1984). The court reasoned that § 841(b)(6) can apply to. *any* § 841(a) offense (involving more than 1,000 pounds of marijuana), and § 846 prohibits attempts or conspiracies to commit the substantive acts prohibited by § 841(a). Since the penalty for conspiracy may not exceed the maximum punishment prescribed for the commission of the offense which was the object of the conspiracy, a person convicted of attempting or conspiring to violate § 841(a) is subject to the maximum penalty for the offense. That penalty may be the one specified under § 841(b)(6) if the offense involves more than 1,000 pounds of marijuana.

Consistent with *McHugh* and *Wright* is the analysis of the Court of Appeals for the Eleventh Circuit in *United States v. Simmons,* 725 F.2d 641 (11th Cir.1984), cert. denied, 469 U.S. 827, 105 S.Ct. 108, 83 L.Ed.2d 52 (1984). In *Simmons,* the court differentiated § 841(a) which declares unlawful the possession with intent to distribute a controlled substance, with § 841(b)(6) which authorizes an enhanced penalty if that controlled substance is marijuana in excess of 1,000 pounds. The court theorized that the substantive crime could be proved without any consideration of the amount involved, but if the proof at trial showed possession of more than 1,000 pounds of marijuana, the enhanced penalty provision would come into play. The court held that the 1,000 pound provision was, therefore, only applicable to the sentencing phase. *Simmons,* 725 F.2d at 643–44.

We recognize that the courts in these cases were not required to answer the question before us (*i.e.,* was notice of the possibility of an enhanced penalty given) because those indictments arguably listed § 841(b)(6). Nonetheless, it is instructive that the courts utilized the premise that § 841(b)(6) is an enhanced penalty provision rather than a separate crime in resolving related and more sophisticated issues. We find persuasive the analyses indicating that § 841(b) is merely a penalty provision to be used at sentencing, after conviction of the substantive crime.

The defendant primarily relies on *United States v. Alvarez,* 735 F.2d 461 (11th Cir. 1984), to support his contention that the quantity of the substance is an element of a separate crime for which an enhanced penalty may be imposed. In *Alvarez,* the court held that

> [T]he present indictment cannot properly serve as the basis for sentences in excess of the five years specified in 21 U.S.C. § 841(b)(1)(B). Since the quantity of the substance constitutes a critical element of the offense under 21 U.S.C. § 841(b)(6), and no quantity of marijuana was specifically alleged in the indictment, the enhanced sentences imposed pursuant to that provision are invalid.

*Alvarez,* 735 F.2d at 468.

Gibbs' reliance on *Alvarez* is misplaced. We do not read *Alvarez* to hold that the amount of marijuana is an essential element of the substantive offense charged. Rather, *Alvarez* is more properly read to require an allegation of value, or quantity, in the indictment, before an enhanced penalty may be imposed. Under the facts in *Alvarez,* the indictment alleged no specific amount of marijuana, and the issue in that case was whether that indictment could support the enhanced penalty. The court found § 841(b)(6) to be a "penalties" section, which enumerated "for sentencing purposes, specific considerations to be given to the type and quantity of the substances." *Alvarez,* 735 F.2d at 461. Finding no allegation of the amount of marijuana in the indictment, the court would not validate the enhanced penalty which had been imposed.

An opposing view has been taken by the Court of Appeals for the District of Columbia in *United States v. Moore*, 540 F.2d 1088 (D.C.Cir.1976). There, the court discussed the legality of an enhanced sentence under 21 U.S.C. § 845(a) which provides for greater punishment for distributing a controlled substance to a person under 21 years of age. The court found that the age of the distributee was an aggravation arising from the manner in which the crime was committed, thereby constituting a new offense. The court concluded that Congress sought to punish activity which would constitute a different element of distributing and required an allegation in the indictment before the greater sentence could be imposed.

We distinguish *United States v. Moore* on the basis that § 845(a) is in itself the separate offense of "distribution to a minor." It is not a category of a penalty section for possession and distribution of controlled substances as is § 841(b)(6).

### III.

■ We find that the indictment against Stephen Gibbs satisfies both parts of the tests outlined in *Sebetich*, 776 F.2d 412, requiring satisfactory notice of the charge, and enabling a defendant to properly plead in bar of further prosecution for the same offense. Count One of the indictment, the only count in which Gibbs was named, specifically recites a violation of 21 U.S.C. § 841(a)(1). The language of the indictment tracks the language of the statute in sufficient detail to leave no question of the nature of the charge against Gibbs. In at least two places the indictment recites the phrase "marihuana, a Schedule I controlled substance." The use of that phrase is relevant in regard to the penalties section of 21 U.S.C. § 841(b).

In § 841(b), the penalties are enumerated according to the schedule on which the controlled substance is listed. If the controlled substance is marihuana, § 841(b)(1)(B) defines the penalty by further reference to the special penalty provisions of § 841(b)(4), (5) and (6). The last of these is the enhanced penalty provision for a violation involving a quantity of marijuana exceeding one thousand pounds.

The final paragraphs of Gibbs' portion of the indictment clearly allege that the marijuana involved was in excess of one thousand pounds. Under these circumstances we find that the offense was described with sufficient particularity to put the defendant on notice of the full nature of the charge against him including the possibility that the enhanced penalty provision for marijuana in excess of 1,000 pounds could be imposed. When the four corners of the indictment are read in their entirety, it is obvious that the penalty provision of (6) could be invoked. It is immaterial that the penalty section was not specifically cited. By virtue of the fact that the indictment charged a conspiracy in violation of § 846 and announced the amount of marijuana involved, Gibbs was fairly informed that he was charged with a violation of § 841(a) involving a quantity of marijuana exceeding 1,000 pounds.

The second element of the *Sebetich* test requires protection from double jeopardy, that is, the accused must not be twice subject to the same offense. In this case, the indictment stated what the defendant was alleged to have done, and when, where and how he was alleged to have done it. *Sebetich*, 776 F.2d 412. The indictment enumerates the means used by the defendants and co-conspirators to further the object of the conspiracy and describes a series of overt acts allegedly taken in furtherance of this conspiracy. We find therefore that the indictment properly protected Gibbs from double jeopardy.

### IV.

■ Gibbs argues as well that imposition of the enhanced penalty violates the *ex post facto* clause of the Constitution. He contends that most of the events of this conspiracy antedated the penalty provision at issue, and that in the absence of a special verdict the jury may not have found any participation in the conspiracy by Gibbs after the effective date of the statute.

The *ex post facto* clause prohibits the imposition of a law which purports to make innocent acts criminal after their event, or to aggravate an offense by altering the amount of punishment imposed for its commission, after the fact, to the disadvantage of the accused.

The enhanced penalty provision at issue here became effective on September 26, 1980, while the conspiracy charged began in the Spring of 1979 and ended on or about October 6, 1980. On its face then, § 841(b)(6) was applicable to all acts and offenses occurring after September 26, 1980.

Gibbs' indictment specifically alleged that on or about April 7, 1980 he discussed buying marijuana with a co-conspirator, that on October 5, 1980 he had a telephone conversation relative to the planeload of marijuana and that on October 6, 1980 the airplane landed with 1,487 pounds of marijuana. At trial, the government offered evidence of Gibbs' participation in the conspiracy beginning in April, 1980. In reviewing the district court's determination that a preponderance of independent evidence established Gibbs' participation at that time, we held that the evidence prermitted a reasonable inference of Gibbs' complicity in the enterprise. *Gibbs I,* 739 F.2d at 843–44. Once the government establishes a defendant's involvement in an ongoing conspiracy, the burden shifts to the defendant to prove by affirmative acts inconsistent with the object of the conspiracy that he withdrew. *United States v. Ammar,* 714 F.2d 238 (3d Cir.1983), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). We held in *Gibbs I* that because there was no evidence that Gibbs withdrew from the conspiracy after April, his involvement could be deemed to have continued until October. *Gibbs I,* 739 F.2d at 845.

■ Since Gibbs' involvement continued after the effective date of § 841(b)(6), that statute is applicable to the events of October, 1980. In addition a statutory change which takes effect during the existence of an ongoing conspiracy will subject members of that conspiracy to the provisions of the later enactment. *See, e.g., United States v. Wells Fargo Armored Car Service Corp.,* 587 F.2d 782 (5th Cir.1979). Thus, § 841(b)(6) was applicable to the acts and offense alleged here.

## V.

■ Gibbs argues that because there is no specific finding by the jury on the amount of marijuana proven by the government, the conviction cannot support the enhanced sentence and that the evidence is insufficient to support a conspiracy to possess over 1,000 pounds of marijuana.

Our standard of review on the denial of a motion to correct illegal sentence is narrow. We will not disturb a ruling on such a motion except for a clear abuse of discretion. *United States v. Bickoff,* 531 F.2d 182 (3d Cir.1976). Moreover, the district court has wide latitude in imposing a sentence within the statutory limits. *United States v. Matthews,* 773 F.2d 48 (3d Cir. 1985.)

In considering Gibbs' more specific argument that the government was required to prove that he knew that the conspiracy was one to possess with intent to distribute in excess of 1,000 pounds of marijuana, we note that this is a variant of his argument that the enhanced penalty provision is a separate element of the offense.

Assuming without deciding that the government was required to prove additionally his specific knowledge that the conspiracy encompassed an amount of marijuana in excess of 1,000 pounds, we find that the trial record clearly supports the fact that over 1,000 pounds of marijuana was involved, and that Gibbs had knowledge that the amount of marijuana involved was in excess of 1,000 pounds.

The trial testimony indicated that as early as April, 1980, Gibbs knew that an airplane was to be used to transport the marijuana to the United States, was in frequent contact with his co-conspirators, and that he was the intended buyer of the marijuana. The trial testimony also indicated that in early October, 1980 Gibbs indicated over the telephone that he had only one hundred

thousand dollars with which to buy the marijuana, that he would get the remaining money to a co-conspirator within a few days, and that he would try to make the necessary arrangements to have someone come down to pick up the delivery.

At trial, Michael Dusenberry, a detective in the organized crime unit of the City of Boca Raton, Florida, testified that he had searched the Beechcraft airplane on October 5, 1980, and that 23 bales of suspected marijuana were removed from the airplane and taken to an evidence locker at the police department. It was stipulated at trial that Jay Pintacuda, forensic chemist of the Sheriff's Office at Palm Beach County, Florida, would have testified that core samples taken from the 23 seized bales of suspected marijuana contained cannabis, a Schedule I controlled substance. Most important, it was never disputed at trial that the amount of marijuana involved was in excess of 1,000 pounds. The jury could clearly infer from this testimony that Gibbs knew that the amount of marijuana was substantial and indeed, in excess of 1,000 pounds. Given our holding that the amount of marijuana is a factor bearing upon sentencing, rather than guilt, we find Gibbs' arguments on these issues meritless. We also note that *at sentencing* Gibbs did not dispute the amount of marijuana nor offer any evidence otherwise.

The defendant's judgment of conviction will be affirmed.

ALDISERT, Chief Judge, dissenting.

What divides the panel here is a basic difference in philosophy. I would hold federal prosecutors to at least some level of minimum competence in drafting indictments. The majority do not. They excuse the slipshod manner in which the indictment was drafted and place a judicial impri-matur on sloppy performance by the office of the United States Attorney. I would not be the circus hand following the prosecutorial elephant around the sawdust trail.

### I.

The majority opinion properly lays out the facts. Stephen Gibbs was one of six persons indicted on September 1, 1981 in the Eastern District of Pennsylvania for conspiracy to violate a federal narcotics statute. The indictment charged the defendant and five others with conspiracy "to engage in the unlawful distribution of, and possession with the intent to distribute, marihuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)." It further provided in paragraphs (e) and (f) under the subdivision entitled "Overt Acts" that a co-conspirator, Joseph Quintiliano, "had a telephone conversation with the defendant Stephen Gibbs to arrange for Gibbs to purchase [a] plane-load of marihuana," and that "[i]n or about the early morning of October 6, 1980, because of a shortage of fuel, [a co-conspirator] Prentiss C. Breland landed the Beechcraft Queen Air airplane at an airport near Boca Raton, Florida with 1,487 pounds of marihuana." [1]

Gibbs was convicted and then sentenced to a ten year term of imprisonment pursuant to 21 U.S.C. § 841(b)(6) (1980). On June 15, 1984, this court sitting in banc affirmed his conviction. *United States v. Gibbs*, 739 F.2d 838 (3d Cir.1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985). On March 14, 1985, Gibbs filed a motion with the district court to correct an illegal sentence pursuant to Rule 35(a), F.R.Crim.P. Thereafter, he moved to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, and

---

1. The government's brief did not advise this court of the exact language of overt act 4(f). It made no mention that the plane's landing was due to a shortage of fuel, stating only:

    4(F). In or about the early morning of October 6, 1980, the defendant Prentiss C. Breland landed the Beechcraft Queen Air airplane at an airport near Boca Raton, Florida, with 1,487 pounds of marijuana.

Br. for United States at 8. This is but one example of the lack of accuracy and candor that I find in this brief.

Incidentally, we usually spell it "marijuana." *See, e.g., United States v. Gibbs*, 739 F.2d 838 (3d Cir.1984) (in banc), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985). Although the indictment spells it "marihuana," and the statute so reads, the government's brief here follows the spelling we have used before.

to reduce the sentence pursuant to Rule 35(b), F.R.Crim.P. The district court denied the motion under Rule 35(a) and ordered a hearing to be held on the motions under section 2255 and Rule 35(b).

Gibbs appeals from the denial of his Rule 35(a) motion to vacate the sentence of ten years imprisonment and to substitute therefor a lesser sentence. He asserts that because the indictment only charged him with conspiring to violate 21 U.S.C. § 841(a)(1), his maximum incarceration was limited to a five year sentence or a $15,000 fine or both, under 28 U.S.C. § 841(b)(1)(B). He contends that because the indictment did not charge a conspiracy either to possess or distribute more than 1,000 pounds of marijuana, or to violate section 841(b)(6), it could not support a ten year sentence under the increased penalties of 21 U.S.C. § 841(b)(6).[2]

I conclude that the quantity of marijuana involved in a violation of 21 U.S.C. § 841(a) is an essential element of a substantive offense under 21 U.S.C. § 841(b)(6) and must be properly alleged in an indictment before sentence under section 841(b)(6) can be imposed. Accordingly, I would hold Stephen Gibbs' ten year sentence illegal, reverse the district court, and remand this case for resentencing pursuant to section 841(b)(1)(B). I base my reasoning on statutory interpretation and the sixth amendment to the United States Constitution.

## II.

In reaching my conclusion that section 841(b)(6) is a substantive offense rather than a mere penalty provision, I am in part persuaded by the legislative history of that section. It is uncontested that, in amending the Controlled Substances Act to include section 841(b)(6), Congress intended to create a critical distinction between two classes of persons violating the Act. S.Rep. No. 916, 96th Cong., 2d Sess. 14, *reprinted in* 1980 U.S.Code Cong. & Admin.News 2858, 2871 (The purpose of the amendment is "to distinguish—for purposes of criminal sanctions—between large and small trafficking violations."). Because existing penalties were thought inadequate to deter the highly organized criminal element involved in drug trafficking, section 841(b)(6) provided for severe prison sentences—sentences equivalent to those then available for heroin offenses. *Id.* Moreover, the amendment does not appear to have been intended to have any effect on the small drug trafficker. *See* 126 Cong. Rec. 11,791 (1980) (remarks of Rep. Carter) ("The amendment does not affect a small-time seller of the drug.").

Having identified two classes of marijuana offenders and the respective punishment to be accorded to each of them, Congress was faced with the task of making its distinction operational. The means by which Congress decided to distinguish between these two classes of marijuana offenders was the quantity of contraband involved in the crime. Congress made the 1,000 pound marijuana quantity the fulcrum upon which turns the degree of opprobrium attached to the crime, and the concomitant degree of punishment available. Given the importance of the quantity of marijuana involved, I would hold that it was intended to be an element of a greater inclusive offense under section 841(b)(6).

## III.

The relevant case law also points toward an interpretation of section 841(b)(6) as a

---

**2.** Title 21 U.S.C. § 841(a)(1) (1982) provides:
(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
  (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....
As in effect at the time Gibbs was sentenced, the relevant portions of 21 U.S.C. § 841(b) (1982) provided:
  (1)(B) In the case of a controlled substance in schedule I ... such person shall ... be sentenced to a term of imprisonment of not more than 5 years, a fine of not more than $15,000, or both....
    ....
  (6) In the case of a violation of subsection (a) of this section involving a quantity of marihuana exceeding 1,000 pounds, such person shall be sentenced to a term of imprisonment of not more than 15 years, and in addition, may be fined not more than $125,000....
Section 841(b) has since been amended by legislation repealing section 841(b)(6). *See* maj. op., *supra,* at 598 n. 1.

substantive offense. The majority suggest that the circuits are divided over the controlling question of this appeal: whether section 841(b)(6) is a substantive offense for marijuana violations involving more than 1,000 pounds of that substance. I am not certain, however, that the cases relied upon by the government and the majority actually support the propositions for which they are cited. Former Chief Judge William H. Hastie was fond of using an expression to describe the situation when a cited case did not stand for the position stated in a lawyer's brief or a judge's opinion. He called this "trampling on graves." I think a lot of trampling occurred here.

The cases relied upon by the government or offered by the majority did not decide the issue before us in this appeal. Only *United States v. Alvarez*, 735 F.2d 461 (11th Cir.1984), has done so. Accordingly, I find no split in the circuits. The government relies on *United States v. Richards*, 737 F.2d 1307 (4th Cir.1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985), *United States v. Simmons*, 725 F.2d 641 (11th Cir.1984), and *United States v. Wright*, 742 F.2d 1215 (9th Cir.1984), for the proposition that the quantity of marijuana involved is not an essential element of a substantive offense under section 841(b)(6). *See* Br. for United States at 8–9, 11–12. But, upon examination, these cases do not so hold.

*Richards* considered three issues: whether there was sufficient evidence that the defendant participated in a conspiracy involving more than 1,000 pounds; whether section 841(b)(6) violated the equal protection clause; and whether the district judge erred in denying the defendant's motion for recusal. 737 F.2d at 1308–09. The question presented in this appeal was neither presented, discussed, nor decided by *Richards*.

The government argues that "[t]he issue raised by Gibbs was considered in *United States v. Simmons....*" Br. for United States at 8. This is simply not true. There was one, and only one, conclusion in *Simmons:*

We conclude ... that the United States need not prove knowledge or intent of the accused to possess in excess of 1,000 pounds to be subject to the more severe sentence [under section 841(b)(6)]. To be subject to it, the government need only show that the amount knowingly possessed with intent to distribute exceeded 1,000 pounds.

725 F.2d at 644. Furthermore, it is noteworthy that in *Simmons*, the indictment specifically charged a violation of section 841(b)(6). *Id.* at 643.

The government's reliance on an isolated excerpt from *Wright*, br. for United States at 12, is plainly illicit. First, the government's brief failed to inform this court that the quotation appeared only in a discussion of evidence sufficiency. Moreover, the government failed to mention that, following the passage it quoted in its brief, the court concluded: "[t]he indictment ... properly charged a conspiracy to violate sections 841(a) and 841(b)(6)." 742 F.2d at 1220. As relevant for our purposes, the court in *Wright* decided only a narrow issue: that a conviction for conspiracy to possess with the intent to distribute more than 1,000 pounds of marijuana did not require proof that more than 1,000 pounds were actually involved. *Id.* at 1220–21.

Thus, three of the primary authorities relied on by the government to excuse their neglect in drafting this indictment involved either cases where the indictment specifically mentioned section 841(b)(6), or specifically charged a conspiracy involving more than 1,000 pounds of marijuana. At best, the government's reliance on these cases was fatuous; at worst, it was a misrepresentation—deliberate, or otherwise—to this court.

Nor do the two additional cases offered by the majority support the government's case. The holding of *United States v. Normandeau*, 800 F.2d 953 (9th Cir.1986), tracked *Simmons* in holding that the government need not prove that the defendant knew of the excess marijuana weight in order for section 841(b)(6) to apply. *Normandeau* expressly reserved the question before us today:

It may be that the indictment must allege that more than 1000 pounds of marijuana was involved before the government may seek enhanced sentences.... We need not decide this issue today because the indictment in this case clearly alleged that more than 1000 pounds of marijuana was involved.

*Id.* at 956 & n. 2.

Similarly, in *United States v. McHugh,* 769 F.2d 860, 868 (1st Cir.1985), an opinion authored by Chief Judge Re of the United States Court of International Trade, the defendant "was indicted under ... 21 U.S.C. §§ 841(a)(1), 841(b)(6), and 846." After holding that the evidence was sufficient to support a finding that more than 1,000 pounds of marijuana were involved, the court stated that even a failure to prove that the marijuana involved was less than 1,000 pounds could not affect a conviction under the lesser offense of section 841(a)(1). In dictum, the court stated: "[P]roving the amount of marijuana is an essential element of the offense only under 21 U.S.C. § 841(b)(6).... " *Id.*

In light of the foregoing, I detect no split in the circuits. In each case cited by the government or offered by the majority, the indictment made the proper allegation which was not forthcoming here. We are thus left with one court of appeals decision squarely on point, *United States v. Alvarez,* 735 F.2d 461 (11th Cir.1984), a case that carries forward the precedents and the philosophy previously expressed by this court.

### IV.

An interpretation of section 841(b)(6) as a substantive offense that must appear in an indictment thereunder is consistent with this court's ruling case law, first articulated in the 1952 case of *United States v. Marpes,* 198 F.2d 186 (3d Cir.), *cert. denied,* 344 U.S. 876, 73 S.Ct. 170, 97 L.Ed. 678 (1952), and reaffirmed in *United States v. Ciongoli,* 358 F.2d 439 (3d Cir.1966). In *Marpes,* the criminal statute at issue distinguished between offenses involving stolen goods valued at $100 and less, and those involving goods valued at more than $100.

198 F.2d at 187 n. 1 (quoting 18 U.S.C. § 659). Judge Kalodner made it clear that where an indictment did not charge the value of goods stolen, sentence could be imposed only on the lesser offense, but where a value of stolen goods in excess of $100 was alleged in the indictment, a sentence on the greater offense could stand. 198 F.2d at 189. In *Ciongoli,* Judge Hastie explained that in a charge of misappropriation of government property, "no particular value of the stolen property need be alleged or proved to sustain a conviction, though in such a case only the lesser punishment can be imposed." 358 F.2d at 441.

The reasoning set forth in *United States v. Alvarez,* 735 F.2d 461 (11th Cir.1984), and *United States v. Moore,* 540 F.2d 1088 (D.C.Cir.1976), is in accordance with that of our court in *Marpes* and *Ciongoli.* Although *Alvarez* and *Moore* plainly support Gibbs' position, the majority attempt to denigrate their importance by labelling them as readily distinguishable. I do not see any controlling distinction.

### A.

I consider *United States v. Alvarez,* 735 F.2d 461 (11th Cir.1984), directly on point and clearly supportive of my view. There the court held that sentences imposed under section 841(b)(6) were illegal, because no allegation of quantity appeared in the indictment. *Id.* at 466–68. The court based its holding on its conclusion that "the quantity of the substance constitutes a critical element of the offense under 21 U.S.C. § 841(b)(6).... " *Id.* at 468; *see also United States v. McHugh,* 769 F.2d 860, 868 (1st Cir.1985) (dictum) (amount of marijuana is essential element of offense under section 841(b)(6)). The *Alvarez* court reasoned that the quantity element specified in section 841(b)(6) was much like the value elements found in 18 U.S.C. §§ 659 and 641, wherein the maximum punishments for offenses under those sections are related to the dollar magnitudes of the crimes. The court made generous reference to cases similar to our court's decisions in *Marpes* and *Ciongoli: Packnett v. United States,* 503 F.2d 949, 950 (5th Cir.1974) (" 'Where

the grade of larceny, and consequently, the punishment, depend on the value of the property, it is essential that the value of the property defendant is charged with having taken be alleged and proved.'") (quoting *Cartwright v. United States*, 146 F.2d 133, 135 (5th Cir.1944)) and *Theriault v. United States*, 434 F.2d 212, 214 (5th Cir.1970) ("For the offense ... to amount to a felony, there must be both charge and proof that the value of the property stolen, etc., exceeds the sum of $100."), *cert. denied*, 404 U.S. 869, 92 S.Ct. 124, 30 L.Ed.2d 113 (1971). *Alvarez*, 735 F.2d at 467.

### B.

I adopt completely the rationale offered in *United States v. Moore*, 540 F.2d 1088 (D.C.Cir.1976). The question there was whether a defendant convicted for violating section 841(a) could be given an enhanced sentence if certain of his section 841(a) violations involved sales of drugs to minors (sales that were prescribed by 21 U.S.C. § 845(a)), when no violation of section 845(a) was alleged in the indictment. In deciding whether section 845(a) contained an additional substantive element or was merely a penalty provision, *Moore* recognized a dichotomy between " 'an historical fact that bespeaks a defendant's demonstrated proclivities' and an 'aggravation arising from the manner in which a crime was committed.' " 540 F.2d at 1090 (quoting *Jordan v. United States District Court for the District of Columbia*, 233 F.2d 362, 367 (D.C.Cir.), *vacated on other grounds sub nom. Jordan v. United States*, 352 U.S. 904, 77 S.Ct. 151, 1 L.Ed.2d 114 (1956)).

Although *Jordan* lacks precedential value, its reasoning is highly persuasive. In that case, the defendant was charged with and convicted of robbery. The government successfully persuaded the district court to impose an additional five year sentence on the basis of a statute making it a separate crime to use a firearm when committing a crime of violence. The court vacated the sentence, impressed by the reasoning of *Meyers v. United States*, 116 F.2d 601, 603 (5th Cir.1940): "The facts constituting such

aggravation of a crime as will increase the statutory punishment must be plainly charged or they are not confessed by a plea or established by a verdict of guilty." *Jordan*, 233 F.2d at 366. The court in *Jordan* set forth the critical dichotomy later reaffirmed in *Moore:*

> In the second-offender situation, however, the criminal act which is proscribed is the same regardless of the background of the criminal; the previous offense is merely "an historical fact," as a result of which the penalty may appropriately be made more severe because of the demonstrated proclivities of the defendant. On the other hand, where the aggravation arises from the manner in which the crime was committed, in substance a different aspect of the offense is sought to be punished. Accordingly, we think—as did the Fifth Circuit in ... *Meyers [v. United States*, 116 F.2d 601 (5th Cir. 1940)] ... that the facts in aggravation must be charged in the indictment and found to be true by the jury.

233 F.2d at 367 (footnotes omitted).

Following *Jordan*'s lead, *Moore* held that the age of a distributee in a section 841(a) violation was an aggravating fact and therefore must have been alleged in the indictment before a penalty could be imposed under section 845(a). 540 F.2d at 1091. Similarly, I would hold that the quantity of contraband involved in a marijuana violation is an aggravating fact that gives rise to a greater inclusive offense for which an indicting charge is required to support a sentence under section 841(b)(6).

### C.

Because I do not think that any defensible reading of *Alvarez* and *Moore* can render those cases distinguishable from the case before us, I would hold that, when combined with *Marpes* and *Ciongoli*, they reinforce the conclusion that section 841(b)(6) is a substantive offense that must be charged in an indictment.

### V.

In light of my conclusion that section 841(b)(6) is a substantive offense, the ques-

tion that remains is whether the district court committed reversible error in denying Gibbs' motion for correction of an illegal sentence pursuant to Rule 35(a), F.R. Crim.P. The test for determining whether an indictment provides sufficient notice to the defendant is whether the defendant received "reasonable notice and information of the specific charge against him." *Bibby v. Tard,* 741 F.2d 26, 29 (3d Cir. 1984). In applying this test, the indictment must be read as a whole. *Id.* at 29. One of the primary purposes for requiring all elements of an offense to be charged is to provide defendants with notice of the criminal charges against them, that they may adequately prepare to meet those charges. *Russell v. United States,* 369 U.S. 749, 763, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962). Moreover, this purpose is not merely salutary, but is a protection the sixth amendment accords to those accused of crimes. U.S. Const. Amend. VI; *United States v. Thomas,* 610 F.2d 1166, 1173 (3d Cir.1979) (per curiam); *accord* Rule 7(c), F.R.Crim.P.

I do not ignore that conspiracy indictments need not allege the elements of the underlying substantive offenses with "technical precision." *See Wong Tai v. United States,* 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545 (1927); *United States v. Wander,* 601 F.2d 1251, 1259 (3d Cir.1979). Nevertheless, a conspiracy indictment must be "sufficient to identify the offense which the defendants conspired to commit...." *Wong Tai,* 273 U.S. at 81, 47 S.Ct. at 302 (quoting *Williamson v. United States,* 207 U.S. 425, 447, 28 S.Ct. 163, 171, 52 L.Ed. 278 (1908)). I conclude that Gibbs' indictment failed to meet this requirement.

The defect in Gibbs' indictment is that it failed to alert him that he was being indicted for a conspiracy involving over 1,000 pounds of marijuana. Overt acts (e) and (f) were insufficient to put him on notice of the offense for which he was charged. Overt act (e) makes no reference to the Breland aircraft landing on October 6, 1980. Overt act (f) does not identify Gibbs with the landing of the Breland aircraft. The only evidence presented against Gibbs may be summarized:

* On April 7, 1980 Gibbs, also known as "Jake," flew from his Massachusetts home to Philadelphia, then to Wings Airfield in Montgomery County, Pennsylvania, and then was driven to the Quakertown Airport where he and co-conspirator Quintiliano inspected a Beechcraft twin-engine airplane.

* Through out-of-court hearsay testimony it was said that Quintiliano stated (1) that he had made arrangements to sell the marijuana to some Floridians who had offered more money than "Jake" and (2) that on October 4, 1980 "Jake" had agreed to buy the marijuana but needed time to obtain the necessary funds.

* Telephone records showing telephone calls in early October, 1980 from Quintiliano to Gibbs' home or to an electronic beeper service nearby; there is no evidence of the substance of any conversation or even that Gibbs received or returned the calls.[3]

At best the conspiracy evidence against Gibbs was skinny. Concededly, it is the law of this case that Gibbs was properly found guilty of a conspiracy to distribute

---

**3.** As Judge Rosenn has perceptively observed:

In an effort to give some credence to the hearsay testimony, the Government introduced evidence of certain telephone records. They showed that long distance calls were made in early October 1980 from Quintiliano's residence in Pennsylvania to the Gibbs residence or to the Ram Broadcast Company in Massachusetts. There is no evidence, however, of any conversation with Gibbs. The Government suggests that from this series of telephone calls it can be inferred that Gibbs and Quintiliano were discussing arrangements for the sale of the marijuana in further-

ance of whatever plans they had made at their April meeting. There are several major problems with the Government's argument, however. One obvious difficulty is the absence of evidence directly linking Gibbs with Ram or proof that any of Quintiliano's calls to Ram were returned. Moreover, except for Quintiliano's out-of-court hearsay, there is nothing to indicate the substance of the conversations or that they actually conversed.

*United States v. Gibbs,* 739 F.2d 838, 851–52 (3d Cir.1984) (in banc) (Rosenn, J., with whom Aldisert and Gibbons, J.J., joined, and with whom Seitz, C.J., substantially joined, dissenting).

marijuana. But this is not to say that he was properly charged with a conspiracy involving a quantity of marijuana in excess of 1,000 pounds. If the United States Attorney truly intended to try an excess weight case against Gibbs under section 841(b)(6), it knew how to do so. Cases in this and other courts are legion. *See, e.g., United States v. Castro,* 776 F.2d 1118, 1123 n. 3 (3d Cir.1985) (U.S. Attorney's Office for the Eastern District of Pennsylvania—the same office as is involved in this case—drafted an indictment charging agreement "to possess with intent to distribute a quantity of marihuana exceeding 1,000 pounds ... in violation of Title 21, United States Code, Section 841(a) and Section 841(b)(6)"), *cert. denied,* — U.S. —, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986); *United States v. Zarintash,* 736 F.2d 66, 67 (3d Cir.1984) (indictment originating in District of New Jersey charged conspiracy to possess 36,000 pounds of hashish with intent to distribute it in violation of 21 U.S.C. § 841(a), (b)(6)); *United States v. Normandeau,* 800 F.2d 953, 956 n. 2 (9th Cir.1986) (the indictment "clearly alleged that more than 1,000 pounds of marijuana was involved"); *United States v. McHugh,* 769 F.2d 860, 867 (1st Cir.1985) (defendant indicted for conspiring to possess and possession of approximately 1,379 pounds of marijuana in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(6)); *United States v. Simmons,* 725 F.2d 641, 643 (11th Cir.) (indictment charged defendant with conspiracy to violate 21 U.S.C. § 841(a)(1), (b)(6)), *cert. denied,* 469 U.S. 827, 105 S.Ct. 108, 83 L.Ed.2d 52 (1984); *United States v. Webster,* 750 F.2d 307, 331 (5th Cir.1984) (defendants charged with conspiracy to possess and possession with intent to distribute approximately 1,500 pounds of marijuana), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985); *United States v. Wright,* 742 F.2d 1215, 1220 (9th Cir.1984) (defendants charged with conspiracy "to possess with intent to distribute marijuana ... in a quantity exceeding 1000 pounds," and incorporated language of section 841(b)(6)); *United States v. Vaglica,* 720 F.2d 388, 391 (5th Cir.1983) (defendant charged with conspiracies to import and

possess with intent to distribute "a quantity exceeding 1,000 pounds of marijuana").

In stark contrast to these cases, the charging portion of the Gibbs indictment makes no reference either to quantity or to section 841(b)(6). I conclude that the indictment did not sufficiently identify section 841(b)(6) as the offense Gibbs conspired to commit. In light of my conclusion that section 841(b)(6) is a substantive offense, the indictment's deficiency is fatal. Accordingly, I would hold that the ten year sentence imposed on Stephen Gibbs under section 841(b)(6) is illegal.

### VI.

I observe at this juncture that the result I reach would not be necessary had the government merely added to the indictment language referring in some fashion to a violation of section 841(b)(6). Indictments that do not adequately apprise defendants of the charges against them exact a social as well as a jurisprudential cost on the functioning of our legal system. First, they engender needless and expensive prosecutions. Although I only speculate on this point, had Stephen Gibbs known that he would be subject to punishment under section 841(b)(6), rather than the comparatively lenient punishment available under section 841(b)(1)(B), he might have chosen to enter into a plea agreement with the government, and thereby might have saved the criminal justice system from this expensive and time-consuming prosecution. Although the right to plea bargain is not constitutionally protected, it certainly is a valued and essential component of an efficient criminal justice system. *Santobello v. United States,* 404 U.S. 257, 260–61, 92 S.Ct. 495, 497–98, 30 L.Ed.2d 427 (1971). Second, from the standpoint of criminal courtroom realities, a case can be made that the indictment here did more than generate a social cost; it also robbed Gibbs of the opportunity to make a reasoned decision as to whether to enter a guilty plea. Going to trial when the maximum sentence is five years may be worth the gamble of a "not guilty" plea; going to trial when the incarceration potential is tripled is quite something else.

Nor am I impressed with the majority's argument that somehow the power of Gibbs' position before this court is dissipated because he did not make this challenge at sentencing. *See* maj. op., *supra*, at 603. This offhand remark ignores the record revealing that Gibbs' basic defense at that time was that there was insufficient evidence to prove him guilty of any crime. Moreover, this was not a throw-away argument, for his contention triggered a court in banc and attracted four out of eleven judges of this court to his point of view, and eventually impressed the Supreme Court to accept *certiorari* in another case on the identical issue.[4]

## VII.

Accordingly, I dissent from the majority's affirmance and would reverse the district court's denial of Gibbs' motion under Rule 35(a), F.R.Crim.P. I would remand this case with an order that a new sentence be imposed under 21 U.S.C. § 841(b)(1)(B).

---

**4.** In *United States v. Inadi*, —— U.S. ——, 106 S.Ct. 112, 89 L.Ed.2d 390 (1986), the Supreme Court finally decreed that the availability prong of the rule in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), outlawing hearsay statements in the absence of proof of reliability and non-availability of the out-of-court declarant, did not apply to out-of-court statements by a non-testifying co-conspirator.