904 F.2d 709
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James A. WALLEY and Theresa D. Walley, Defendants-Appellants.
 No. 89-5656.
 United States Court of Appeals, Sixth Circuit.
 June 15, 1990.
 
 Before KENNEDY and ALAN E. NORRIS, Circuit Judges, and AVERN COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants, James Anthony "Tony" Walley and Theresa Darlene Walley, appeal from their criminal convictions of one count of conspiracy to distribute and possess with intent to distribute cocaine and one count of aiding and abetting the distribution of and possession with intent to distribute cocaine. Theresa Walley contends that the district court erred in denying her motion to suppress certain of her statements to government agents on the ground that she was not given Miranda warnings. She also contends that there was insufficient evidence to sustain her conviction of the offense of aiding and abetting the distribution of or possession with intent to distribute cocaine. In addition, both contend that there was insufficient evidence to sustain their convictions for conspiracy. For the reasons stated, we affirm the convictions.
 
 I.
 A. Evidence on the Motion to Suppress
 
 2
 Theresa Walley moved to suppress certain statements that she had given to government agents on the ground that she was not given her Miranda warnings, and the district court conducted a hearing on this motion on September 12, 1988. At the hearing, Alcohol, Tobacco & Firearms Agent O.B. Combs testified that he and two other law enforcement officers approached Theresa Walley after she had come out of a suntanning establishment and gotten into her car. He stated that he identified himself and told her that he wanted to talk to her, and that she then asked if they could talk somewhere else. He testified that he agreed and that they followed her as she drove her car to another location. She then left her car and voluntarily got into the car with the officers.
 
 
 3
 Combs further testified that he explained to Walley that he knew of her cocaine-related activities and attempted to give her Miranda warnings. He claimed that after he told her that she had the right to an attorney and that anything she said could be used against her, she interrupted and stated that it looked like they knew everything anyway so she might as well tell them. He said she then made the incriminating statements.
 
 
 4
 Combs and another officer testified that they did not attempt to arrest Walley, did not physically restrain her, did not tell her that she could not leave, and that once she indicated that she did not want to answer any more questions, they stopped questioning her.
 
 
 5
 Theresa Walley testified that Combs had knocked on her car, showed her his badge, and told her to get in his car. She said she was scared and felt that she was going to jail. She claims that Combs never read her any rights and that the officers questioned her for two hours. She also claimed that they followed her home and came into her house. She further testified that she told the officers that she wanted to talk to a lawyer or her husband but that they continued to question her.
 
 
 6
 The district court credited the testimony of the questioning officers and concluded that "[n]one of the facts would lead one to conclude that at any point Walley was 'in custody.' " The court held that Theresa Walley's rights were not violated and denied the motion.
 
 B. Evidence at Trial
 
 7
 On March 14, 1988, Danny Marks, a government informant, and Agent Combs arranged to meet Joe Drumheller, who worked with Marks, to purchase cocaine. Drumheller testified that he then called the Walleys' residence and told Tony Walley that he had a man who wanted a quarter-ounce of cocaine. He stated that he had received cocaine from both Tony and Theresa Walley on other occasions. He testified that on that day Tony Walley supplied him with cocaine and drove both of them to meet Marks and Combs at a Minit-Mart in Bowling Green, Kentucky. Drumheller sold Marks the cocaine for $600 and gave $550 of the money to Tony Walley. Marks asked Drumheller if the cocaine was any good, and Tony Walley responded that Marks would not be disappointed.
 
 
 8
 Agent Combs testified that, on March 23, 1988, Drumheller told him that his supplier would be traveling to Nashville, Tennessee to pick up cocaine. Combs and another agent witnessed Theresa Walley and Jessica Embry arrive at the Nashville airport. Walley and Embry appeared to be waiting for someone to arrive on an incoming flight, but the party did not arrive. One of the women remarked to the other: "I can't believe he missed the flight." Walley then made a phone call from a pay phone during which Combs heard her say: "He didn't arrive, something must have happened."
 
 
 9
 Theresa Walley and Embry spent the night at a Ramada Inn in Nashville. Phone records show that two calls were made from the room--one to Kenneth Ray Dukes in Florida and one to Drumheller. Combs testified that the next morning Drumheller told him that "the guy missed the plane or something in Atlanta," and that Theresa Walley would bring the cocaine later than planned.
 
 
 10
 Dukes arrived the next morning, and Embry and Walley returned home. That same day, Atlanta police detained and questioned Dukes while he was in the Atlanta airport on his way back to Florida. Dukes had with him a small Ramada Inn bag containing $5,000 in currency and drug residue. Several days later, Drumheller told Combs that his "source" had "gotten busted" at the Atlanta airport.
 
 
 11
 The government also introduced statements that Theresa Walley gave to Agent Combs on April 20, 1988. Walley told Combs that she had purchased cocaine for her own use and also to sell to friends. She told him that she purchased one-eighth of an ounce in January 1988, one ounce in February 1988, and two or three ounces from Dukes at the Nashville airport in February or March 1988; and that the one-quarter of an ounce of cocaine sold to Combs and Marks on March 14, 1988 had come from the amount she had purchased from Dukes. She also told him that she had driven to the Nashville airport on March 23, 1988 to purchase cocaine from Dukes; that Dukes had missed the plane, that she had called Drumheller to explain that Dukes had not arrived, and that Dukes arrived the next day. She denied, however, that she had obtained cocaine that day. Finally, she told Combs that, after his arrest, Dukes had called her and requested that she contact Embry and tell her to send money to him.
 
 
 12
 Evidence was also introduced that, on April 4, 1988, Combs purchased eight ounces of cocaine from Drumheller and two other defendants. There is no evidence that either of the Walleys were directly involved in this particular transaction.
 
 II.
 A. The Motion to Suppress
 
 13
 Theresa Walley contends that the district court erred in finding that she was not in custody and, therefore, not entitled to be warned of her Miranda rights. It is well-settled that this court reviews the district court's factual findings with respect to a motion to suppress under the clearly erroneous standard. See, e.g., United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980). The district court found that Walley was first questioned outside the tanning facility, requested that the questioning take place elsewhere, moved to another location in her own vehicle, and voluntarily entered the police car. The court further found that she asked the police whether she was going to be arrested; that the police told her that they did not know; and that she was allowed to leave after she requested to talk to her husband or an attorney. Supported by agent Combs' testimony which the district judge credited, these findings are not clearly erroneous.
 
 
 14
 Walley argues, however, that, even under the facts as found by the district court, a reasonable person would have considered herself to be in custody. She relies heavily upon the fact that the police never explicitly told her that she was not under arrest and that she was free to leave whenever she wanted. However, under the totality of the circumstances, even though the police did not expressly tell Walley that she was not under arrest and was free to leave, there was no "formal arrest or restraint on freedom of movement of the degree associated with the formal arrest." See California v. Beheler, 463 U.S. 1121, 1125 (1983). Accordingly, the district court did not err in concluding that Walley was not in custody.
 
 B. Sufficiency of the Evidence on Count 2
 
 15
 Count 2 of the indictment charges the Walleys with aiding and abetting the possession with intent to distribute and distribution of the one-quarter ounce of cocaine that was purchased by informant Marks and Agent Combs on March 14, 1988. Theresa Walley contends that there was insufficient evidence to allow a jury to convict her of this offense. However, the government introduced her statement to Agent Combs that she purchased two or three ounces of cocaine from Dukes in February or March of 1988, and that the one-quarter ounce sold to informant Marks and Agent Combs came from this two or three ounces. Since Walley's statements were properly admitted, there was certainly enough evidence for the jury to reasonably find Theresa Walley guilty of this offense beyond a reasonable doubt.
 
 C. Sufficiency of the Evidence on Count 1
 
 16
 Count 1 of the indictment charges Tony and Theresa Walley, along with five other defendants, with conspiracy to distribute or to possess with intent to distribute in excess of eight ounces of cocaine during a four-month period from January 1, 1988 to April 4, 1988. The Walleys argue that there was insufficient evidence to convict them of this offense because the only transaction that actually involved eight ounces of cocaine was the April 4, 1988 sale, in which the Walleys were not directly involved.
 
 
 17
 However, Count 1 does not charge the Walleys with being involved in the April 4, 1988 transaction, but instead charges them with conspiring with a number of other individuals to sell cocaine over a four-month period. Although the indictment charges the Walleys with conspiring to distribute and possess with intent to distribute in excess of eight ounces of cocaine, the amount charged in the indictment is not an element of the conspiracy offense; the government was only required to show that the Walleys participated in a common plan in which they or their coconspirators intended to distribute or possess with intent to distribute measurable amounts of cocaine. See United States v. Moreno, 899 F.2d 465 (6th Cir.1990); United States v. Gibbs, 813 F.2d 596, 599-601 (3d Cir.), cert. denied, 484 U.S. 822 (1987); United States v. Woods, 568 F.2d 509, 512 (6th Cir.), cert. denied, 435 U.S. 972 (1978).
 
 III.
 
 18
 For the reasons stated, defendants' convictions are affirmed.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation