**UNITED STATES of America, Plaintiff,**

v.

**Mark Earl HENDERSON, Defendant.**

**No. Crim.A. 2:99–00214–01.**

United States District Court,
S.D. West Virginia,
Charleston Division.

July 19, 2000.

Monica K. Schwartz, Assistant United States Attorney, Charleston, WV, for plaintiff.

Matthew A. Victor, Charleston, WV, for defendant.

### MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

A federal jury convicted Mark Henderson of four counts, including counts of conspiring and attempting to commit drug offenses proscribed by 21 U.S.C. § 841. As has been the typical practice in federal drug prosecutions, the indictment did not charge, nor did the jury find, an amount of drugs attributable to Henderson. This court concludes that a recent Supreme Court opinion, *Apprendi v. New Jersey,* —— U.S. ——, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), mandates

that in cases in which the government seeks increased penalties, the amount of drugs involved in a violation of section 841 is an element of the offense that must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. Because the authority to determine that element now rests in the hands of the jury, this court could not sentence Henderson pursuant to an increased statutory penalty range. The United States Sentencing Guidelines, however, required the court to sentence Henderson to a term of at least 35 years imprisonment.

## I.

Mark Henderson was convicted by a jury of his peers on March 30, 2000 of four separate counts. Counts one and three charged violations of 21 U.S.C. § 846, the penalties for which are provided in 21 U.S.C. § 841.[1] Specifically, count one charged Henderson with conspiring to manufacture and distribute methamphetamine and to distribute marijuana in violation of 21 U.S.C. § 846, and count three charged aiding and abetting the attempted possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Count two charged Henderson with aiding and abetting money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2. Count four, originally identified as count five in the second superseding indictment, charged Henderson with the possession, use, and carrying of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1) and 2. A basic overview of 21 U.S.C. § 841 will be useful in understanding the specific findings the court made at Henderson's sentencing and the legal issues presented by his sentencing.

Based on the large number of narcotics cases that crowd the federal criminal system, court interpretations of 21 U.S.C. § 841 have played a significant role in revamping traditional notions of criminal offense elements and sentencing factors. *See* Kyle O'Dowd, *Grid & Bear It,* The Champion, Mar. 2000, at 43 (noting that drug law violators constituted sixty percent of the federal prison population by the end of 1998). That statute, the primary one upon which federal drug prosecutions are based, proscribes various physical acts in one section and provides graduated penalties in the following section. Section 841(a)(1), entitled "Unlawful Acts," states that "it shall be unlawful for any person knowingly or intentionally— (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Section 841(b), entitled "Penalties," provides different penalties depending on the establishment of certain facts, including recidivism, whether serious bodily injury or death results from the violation, and the type and amount of drugs involved in the offense.

The determination of the penalties for a violation of section 841 involving schedule I or II controlled substances begins with a consideration of section 841(b)(1)(C), which states that:

> [i]n the case of a controlled substance in schedule I or II ... except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years.

21 U.S.C. § 841(b)(1)(C). The language "except as provided in subparagraphs (A), (B), and (D)," illustrates that section 841(b)(1)(C) provides a maximum sentence of twenty years for a schedule I or II controlled substance offense;[2] it is the

---

**1.** The court recognizes that the charges in counts one and three were brought pursuant to 21 U.S.C. § 846, which makes it unlawful to attempt or conspire to commit any offense defined in the Controlled Substances Act, in this case 21 U.S.C. § 841(a)(1). A person who attempts or conspires to commit such an offense "shall be subject to the same penalties as those prescribed for the offense, the com-

mission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. For clarity purposes, the court will refer to the drug offenses involved in this case as section 841 violations.

**2.** Marijuana is a schedule I controlled substance. Methamphetamine is a schedule II controlled substance.

starting point within which the judge must statutorily sentence a defendant found guilty of a section 841 violation.

The larger the amount of drugs, the more heavily Congress punishes the defendant. Thus, 21 U.S.C. § 841(b)(1)(B) provides that a person who commits a section 841(a) offense involving

> (vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 100 or more marijuana plants regardless of weight; or (viii) 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers; ... shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years.

21 U.S.C. § 841(b)(1)(B). If the offense involves more than 1,000 kilograms of marijuana (or more than 1,000 marijuana plants) or more than fifty grams of methamphetamine (or 500 grams of a mixture containing methamphetamine), section 841(b)(1)(A) increases the statutory imprisonment range even further to one with a minimum mandatory sentence of ten years and a maximum of life imprisonment.

Offense conduct is the amount of drugs establishing the statutory penalty range. *See generally* U.S.S.G. § 1B1.2(a). Next, judges find a drug amount called relevant conduct, which includes the offense conduct and all other drug amounts that were "part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(2). Judges take the amount of relevant conduct, apply it to the drug quantity table set out in the federal sentencing guidelines, and find the corresponding sentencing guideline range within which they are generally required to sentence the defendant. *See id.* § 2D1.1(c). Judges must sentence the defendant within the statutory penalty range established by the offense conduct even if the sentencing guideline range falls below or exceeds the statutory penalty range. *See id.* § 5G1.1.

Every United States court of appeals has concluded that the judge, not the jury, determines the amount of drugs involved in the offense. *See, e.g., United States v. McHugh,* 769 F.2d 860, 867 (1st Cir.1985); *United States v. Campuzano,* 905 F.2d 677, 679 (2d Cir.1990); *United States v. Gibbs,* 813 F.2d 596, 599 (3d Cir.1987); *United States v. Powell,* 886 F.2d 81, 85 (4th Cir.1989); *United States v. Morgan,* 835 F.2d 79, 81 (5th Cir.1987); *United States v. Moreno,* 899 F.2d 465, 472 (6th Cir.1990); *United States v. Acevedo,* 891 F.2d 607, 611 (7th Cir.1989); *United States v. Wood,* 834 F.2d 1382, 1388 (8th Cir. 1987); *United States v. Sotelo–Rivera,* 931 F.2d 1317, 1319 (9th Cir.1991); *United States v. Jenkins,* 866 F.2d 331, 334 (10th Cir.1989); *United States v. Cross,* 916 F.2d 622, 623 (11th Cir.1990) (per curiam); *United States v. Patrick,* 959 F.2d 991, 995 (D.C.Cir.1992); *see also United States v. Foye,* 68 F.Supp.2d 730, 734 (S.D.W.Va. 1999) (Goodwin, J.), *aff'd,* 210 F.3d 362 (4th Cir.2000) (unpublished), *petition for cert. filed,* June 19, 2000 (No. 99–10143). These decisions are uniform in finding that the physical act comprising the drug transaction and the defendant's knowledge of the substance as being illegal are the only elements of a section 841 offense. In contrast, the amount of drugs involved in the offense has been viewed simply as a sentencing factor. Despite the extreme differences in the available statutory penalties, from maximum penalties of twenty years, forty years, and life imprisonment and minimum terms of no incarceration, five years, and ten years, defendants are placed in the "extraordinary position of having facts which may be central to the amount of punishment they will receive decided by a judge ... rather than by a jury." *See* Mark D. Knoll & Richard D. Singer, *Searching for the 'Tail of the Dog': Finding 'Elements' of Crimes in the Wake of* McMillan v. Pennsylvania, 22 Seattle U.L.Rev. 1057, 1094 (1999). In addition to the serious implications for a defendant's

Sixth Amendment right to a jury trial, the judge's determination of drug amounts is based on a mere preponderance of the evidence rather than the more discerning beyond a reasonable doubt standard.[3]

While the decisions have been uniform, this procedure, which requires judges rather than juries to find drug amounts, has not gone without criticism. *See, e.g., id.* at 1091–1100; *United States v. Rigsby,* 943 F.2d 631, 639–43 (6th Cir.1991) (criticizing but following circuit precedent); *United States v. Gibbs,* 813 F.2d 596, 604 (3d Cir.1987) (Aldisert, J., dissenting). This is because the federal scheme, as interpreted prior to *Apprendi,* requires prosecutors to prove to a jury beyond a reasonable doubt that the defendant engaged in a drug transaction with knowledge of the illegality, but then takes this fact-finding role away from the jury and relaxes the standard by which the prosecutors may prove facts that dramatically increase the statutory incarceration period. As the Supreme Court noted, "[i]t is ... no trivial question to ask whether recognizing an unlimited legislative power to authorize determinations setting ultimate sentencing limits without a jury would invite erosion of the jury's function to a point against which a line must necessarily be drawn." *Jones v. United States,* 526 U.S. 227, 244, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). Under well-settled precedent prior to *Apprendi,* however, that line was drawn in a way that severely restricted a defendant's due process clause and Sixth Amendment rights, and shrank the significance of the jury.

## II.

The indictment in this matter did not charge, nor did the jury find, any amount of drugs attributable to Henderson.[4] The probation officer referenced 21 U.S.C. § 841(b)(1)(A) in a presentence investigation report as providing the appropriate statutory penalty range for the offenses charged in counts one and three. That section increases a drug sentence to a maximum term of life imprisonment with a minimum ten years of imprisonment and only applies when the amount of drugs involved in the violation exceeds a certain statutory amount.[5] This court finds, as discussed below, that *Apprendi* prohibits the court from finding the amount of drugs that constitutes Henderson's offense conduct. This court therefore could not sentence the defendant pursuant to section 841(b)(1)(A). The court could only sentence the defendant to a maximum of

**3.** One common method used by courts to determine whether a fact is an element of the offense or a sentencing factor is the ease by which the fact can be determined. *See, e.g., McMillan v. Pennsylvania,* 477 U.S. 79, 84, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (noting that determination of whether a defendant possessed a firearm triggering Pennsylvania's mandatory minimum sentence of incarceration was "susceptible of objective proof"). But, as probation officers, prosecutors, defense lawyers, and federal judges are painfully aware, the determination of the amount of drugs in a section 841 sentencing is often not "susceptible of objective proof." The determination often requires sentencing hearings lasting hours or even days, in which many of the witnesses, drug users and dealers themselves, testify as to their recollection of the amount of drugs involved in the offense and attributable to the defendant. The United States Sentencing Guidelines recognize the difficulty inherent in this determination by allowing judges to "approximate" and find with reasonable certainty the amount of drugs involved in the offense based on indicia such as the amount of money seized from a defendant as compared to the street market value of a given drug. *See* U.S.S.G. § 2D1.1 n. 12.

**4.** The jury stated in a special interrogatory, however, that Henderson was guilty of count one for conspiring to distribute both methamphetamine and marijuana and for conspiring to manufacture methamphetamine.

**5.** Relevant to this case, section 841(b)(1)(A) applies when the offense involves: "(vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana or 1,000 or more marijuana plants regardless of weight; or (viii) 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, its isomers, or salts of its isomers." 21 U.S.C. § 841(b)(1)(A).

twenty years on each drug count pursuant to 21 U.S.C. § 841(b)(1)(C).

■ At sentencing, this court determined that U.S.S.G. § 3D1.2(b) of the sentencing guidelines required these two drug counts and the money laundering count grouped for sentencing purposes because all three counts involved the same victim and involved two or more acts or transactions connected by a common criminal objective, the distribution of methamphetamine.[6] *See* U.S.S.G. §§ 3D1.1(a)(1) and 3D1.2(b). Generally, counts grouped under U.S.S.G. §§ 3D1.1 and 3D1.2 require concurrent sentences. The court found that U.S.S.G. § 2D1.1, applicable to offenses involving drugs, provided the offense level for the grouped counts.[7] During sentencing, the court determined that the relevant conduct attributable to the drug counts was 1.5 kilograms of methamphetamine and one pound of marijuana, which, when converted to a marijuana equivalency, equals 3,000.45 kilograms of marijuana. This resulted in a base offense level of 34 pursuant to U.S.S.G. § 2D1.1.[8] After finding that certain offense level adjustments applied,[9] Henderson's total offense level was increased to 42. A criminal history category of 1, and an offense level of 42, resulted in an imprisonment range of 360 months to life under the federal sentencing table for each of counts one, two, and three.

This imprisonment range exceeded the maximum statutory penalty of twenty years imprisonment that the court could impose on each of Henderson's two drug counts. Likewise, it also exceeded the maximum twenty year imprisonment permitted for the money laundering count. *See* 18 U.S.C. § 1956(a)(1)(A)(i). Thus, despite the guideline imprisonment range providing for 360 months to life, the court could not sentence Henderson to more than twenty years on each of the grouped counts.

### III.

#### A.

Historically, elements of a criminal offense included every fact that, by law, imposed or increased punishment. *See Apprendi,* —— U.S. ——, 120 S.Ct. 2348, 2371 (Thomas, J., concurring). An early understanding of which facts constituted elements of an offense was extremely broad. Simply put, any fact relevant to punishment was an element of the crime. *See* Knoll & Singer, 22 Seattle U.L.Rev. at 1062–81 (examining the historical importance of punishment as the litmus test in determining what constituted an element of the offense prior to *McMillan* ).

Common law decisions consistently held that value and quantity facts that increased statutory penalties were properly considered elements of an offense. *Id.* A well respected treatise on criminal law discussed the inextricable link between punishment and offense elements and noted

---

**6.** The sentence for count four, possession of a firearm in connection with a drug trafficking offense, requires a five year mandatory minimum imprisonment to a maximum of life imprisonment and must be served consecutively to any other sentence imposed.

**7.** U.S.S.G. § 3D1.3(a) provides that the offense level for such a grouped count is the most serious of the counts comprising the group, that is, the highest offense level of the counts in the group. U.S.S.G. § 2D1.1 provides the highest offense level for the group.

**8.** As discussed in greater detail below, *Apprendi* now prohibits a sentencing judge from making factual determinations that increase

statutory penalties. *Apprendi* does not, however, extend so far as to preclude judges from determining the drug amount for purposes of relevant conduct.

**9.** The court applied the following offense level adjustments: (1) a 4–level increase pursuant to U.S.S.G. § 3B1.1(a) for the defendant's aggravating role in the offenses; (2) a 2–level increase pursuant to U.S.S.G. § 3B1.4 for the use of a person less than eighteen years of age to commit the offenses; and (3) a 2–level increase pursuant to U.S.S.G. § 3C1.1 for the defendant's attempt to obstruct or impede the administration of justice during the course of the investigation of the instant offenses of conviction.

that value and quantity facts were required to be stated in an indictment. *See* Joseph Chitty, A Practical Treatise on the Criminal Law 235–36 (1816).

> It is also frequently necessary in the description of an offence, to state the quantity, number, and value of goods which are essential to the constitution of the offence, or necessary to the right understanding of the indictment.... In the case of theft the value must be shown in order that it may appear whether the offence is grand or petit larceny.

*Id.*

A prosecution for larceny was a typical example of this principle. In *Hope v. Commonwealth*, 50 Mass. 134, 136 (1845), the Massachusetts Supreme Court held that the government was required to allege the value of the item stolen in the indictment before a defendant could be found guilty of larceny under Massachusetts law. The Massachusetts statute had a single offense of larceny that provided two different sentencing ranges depending on whether the stolen property exceeded $100. It was of no significance that the statute grammatically separated the offense of larceny from the two value-based punishments, which is similar to the separation in section 841 of the unlawful acts from the drug amount-based punishments. Because value affected punishment, value was an element of the offense. *Id.* at 136–137. The court wrote:

> The well settled practice, familiar to us all, has been that of stating in the indictment the value of the article alleged to have been stolen.... The reason for requiring this allegation and finding of value may have been, originally, that a distinction might appear between the offenses of grand and petit larceny, in reference to the extent of punishment; that being graduated, in some measure, by the value of the article stolen. Our statutes, it will be remembered, prescribe the punishment for larceny, with reference to the value of the property stolen; and for this reason, as well as because it is in conformity with long established practice, the court are of opinion that the value of the property alleged to be stolen must be set forth in the indictment.

*Id.; see also Apprendi*, —— U.S. ——, —— – ——, 120 S.Ct. 2348, 2370–71 (Thomas, J., concurring) (surveying pre-*McMillan* cases that required value and quantity facts to be alleged in the indictment and proven when punishment was contingent on those facts).

The paramount role that the jury plays in our country's criminal justice system compels a broad view of offense elements. As the *Apprendi* Court noted, the right to a trial by jury was viewed as a necessary shield from the very real possibility of state oppression and tyranny. *Apprendi*, —— U.S. ——, ——, 120 S.Ct. 2348, 2356. Our criminal justice system receives legitimacy every time a group of twelve ordinary citizens, the defendant's peers, make the necessary factual determinations regarding innocence or guilt and the level of culpability and range of punishment that should attach. *Id.* (stating that "trial by jury has been understood to require that 'the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbors'" (citing 4 W. Blackstone, Commentaries on the Laws of England 343 (1769))); *see also Duncan v. Louisiana*, 391 U.S. 145, 151–54, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) ("Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge.").

Courts, although separate and independent from the legislature and the executive, are unquestionably a part of the state. For this reason, a judge's factual finding is not a determination independent of the state as a jury verdict most certainly is. A

weakened jury role, as threatened by a narrow interpretation of offense elements, creates a criminal justice system that is perceived, and is in reality, entirely state-driven; legislatures make laws and prescribe statutory penalties, the executive branch enforces those laws and prosecutes offenses, and the judiciary makes the factual findings that subject defendants to increased statutory penalties.

Moreover, as the Supreme Court stated in *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." The proof beyond a reasonable doubt standard has become imbedded in society's lexicon as the standard necessary to check prosecutorial overreaching. Accordingly, before a person is to be found guilty, subjected to a sentence of incarceration, and stigmatized by the penalty, it is incumbent that those facts be arduously tested by a jury through proof beyond a reasonable doubt. *See id.* at 361, 90 S.Ct. 1068 (stating that "[t]he requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation").

B.

The Supreme Court's watershed decision in *McMillan v. Pennsylvania* dramatically narrowed the broad historical view of offense elements. In *McMillan,* the Court upheld a Pennsylvania law that required judges to sentence anyone convicted of certain felonies to a minimum of five years if the defendant "visibly possessed a firearm" during the commission of the felony. *McMillan,* 477 U.S. at 86–88, 106 S.Ct. 2411. The statute explicitly provided that the firearm possession was not to be included as an element of the crime, but instead provided that the sentencing judge alone was to make the factual finding by a preponderance of the evidence at a sentencing hearing. The Court relied heavily on the legislature's express decision declaring the fact a non-element and stated that courts "should hesitate to conclude that due process bars the State from pursuing its chosen course in the area of defining crimes and prescribing penalties." *Id.* at 86, 106 S.Ct. 2411.

In upholding the statute, the Court, for the first time, coined the term "sentencing factor" referring to those facts that need not be found by a jury, but that may be determined by a judge in determining a sentence within a statutory range. *Id.* The Court was explicit in declaring that its holding was restricted to situations in which the maximum statutory penalty was not increased. *Id.* at 87–88, 106 S.Ct. 2411. It explained that:

[The Pennsylvania statute] neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm.... The statute gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense.

*Id.*

Post-*McMillan* cases continued the swing towards greater judicial authority and away from the traditional role of the jury as the ultimate finder of statutory aggravating circumstances directly linked to statutory penalties. In determining whether a statutorily defined fact was an element of the offense or a mere sentencing factor, courts relied heavily on the tautology expressed in *McMillan* that an element of the offense is anything that the legislature chooses to call an element of the offense. Courts used various maxims of statutory construction to ascertain congressional intent, and the general approach was described as looking to "the statute's language, structure, subject matter, context, and history." *See Almendarez–Torres v. United States*, 523 U.S. 224,

228, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).

Accordingly, courts engaged in a micro-analysis of federal statutes, analyzing the effect of every comma, parsing the statutes into smaller phrases and words, studying the legislative history, and considering the legislative purpose behind the statutes. If Congress intended for statutory facts to be sentencing factors, then courts found that intent dispositive under *McMillan*, regardless of the practical effect of the factual finding. For example, with respect to a section 841 violation, the placement of types and amounts of drugs in a section entitled "Penalties," separate and apart from a section listing certain elements of an offense and entitled "Unlawful Acts," led courts, including this one, to conclude that the legislature intended that fact to be a sentencing factor, not an element of the offense. *See, e.g., Foye*, 68 F.Supp.2d at 733–34; *see also Almendarez–Torres*, 523 U.S. at 234, 118 S.Ct. 1219 ("A title that contains the word 'penalties' more often . . . signals a provision that deals with penalties for a substantive crime.").

### C.

Although *McMillan* was careful not to extend its holding to statutory facts that increase the maximum statutory penalty range, the Court in *Almendarez–Torres* broadened the reach and stripped the jury of its traditional role of finding those facts that increased the defendant's maximum statutory penalty. That case involved interpretation of statutory aggravating circumstances contained in 8 U.S.C. § 1326. Section 1326(a) makes it unlawful to reenter the country after having been deported and provides a maximum penalty of two years imprisonment. Section 1326(b)(1) enhances the statutory maximum penalty to ten years if the alien was deported as a result of a conviction for a felony or certain misdemeanors; section 1326(b)(2) increases the statutory maximum penalty even further, to twenty years, if the alien was deported as a result of an aggravated felony.

The defendant was indicted for violating section 1326(a) and pleaded guilty to that count. At sentencing, however, the government argued that his offense fell within section 1326(b)(2) because his original deportation resulted from an aggravated felony. The defendant objected on the ground that the indictment merely alleged the section 1326(a) violation, rather than the statutory aggravating circumstances set forth in section 1326(b). The Court rejected his argument and affirmed an eighty-five month sentence, reasoning that section 1326(b)(2) is a penalty provision, not a separate crime, that authorizes an increased sentence even though the government did not charge the earlier conviction in the indictment. *Almendarez–Torres*, 523 U.S. at 239–47, 118 S.Ct. 1219.

Although *Almendarez–Torres* was the first case in which a statutory maximum penalty was increased without formal charge or a jury finding, the Court focused primarily on the unique nature of recidivism. *Id.* In concluding that the prior convictions were merely sentencing factors, the Court stated that recidivism is "as typical a sentencing factor as one might imagine." *Id.* at 230, 118 S.Ct. 1219 (noting that "the lower courts have almost uniformly interpreted statutes [authorizing sentencing enhancements for prior convictions] as setting forth sentencing factors, not as creating new crimes"). Due process and Sixth Amendment concerns are mitigated because procedural safeguards were adhered to with respect to the prior convictions upon which the section 1326(b)(2) enhancements were based. *See Apprendi*, — U.S. —, —, 120 S.Ct. 2348, 2361. The Court also reasoned that introduction of prior conviction evidence in the indictment or at trial risks significant prejudice to the defendant and further supports the principle that recidivism was to be treated differently. *Id.*

### D.

One year after *Almendarez–Torres*, the Supreme Court decided *Jones v. United*

*States,* in which it noted "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215. In *Jones,* the Court construed the federal carjacking statute, 18 U.S.C. § 2119, which provides increased penalties if the carjacking offense involves serious bodily injury or death. The Court held that the statutory facts of serious bodily injury or death constituted elements of the offense, rather than mere sentencing factors, and that the statute then defined three distinct offenses rather than a single offense with a choice of three maximum penalties.[10] *Id.* at 229, 119 S.Ct. 1215. In adopting this construction, the Court relied on the doctrine of constitutional doubt, noting that an alternative construction might implicate serious violations of the due process clause of the Fifth Amendment and the Sixth Amendment's rights to notice and jury trial. *Id.* at 240, 119 S.Ct. 1215.

*Jones* immediately sparked a rash of cases in which defendants challenged sentencing judges' authority to determine the amount of drugs in a section 841 offense on the ground that those facts were elements of the offense that must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. Despite the loaded language contained in *Jones,* this court, and several others, refused to extend that case to 21 U.S.C. § 841. *See, e.g., United States v. Thomas,* 204 F.3d 381, 383–84 (2d Cir.2000); *United States v. Rios–Quintero,* 204 F.3d 214, 219 (5th Cir.2000); *United States v. Jackson,* 207 F.3d 910, 920 (7th Cir.2000); *United*

*States v. Hester,* 199 F.3d 1287, 1291–92 (11th Cir.2000); *United States v. Williams,* 194 F.3d 100, 107 (D.C.Cir. 1999); *Foye,* 68 F.Supp.2d at 732. Courts were hesitant to extend *Jones* to section 841 because the Supreme Court specifically stated that its decision in *Jones* "does not announce any new principle of constitutional law, but merely interprets a particular federal statute in light of a set of constitutional concerns that have emerged through a series of our decisions over the past quarter century." *See, e.g., Foye,* 68 F.Supp.2d at 732 (*quoting Jones,* 526 U.S. at 252 n. 11, 119 S.Ct. 1215).

Whereas the carjacking statute was worded in an ambiguous manner, courts found that the clear congressional intent behind 21 U.S.C. § 841 was that the drug amount is a sentencing factor rather than an offense element because the drug amount is set off in a separate subsection with a "Penalties" label. *See, e.g., Foye,* 68 F.Supp.2d at 733–34. Because *McMillan,* still good law after *Jones,* held that courts should generally defer to legislative wishes to distinguish elements from sentencing factors, *Jones's* reach was limited to the specific wording of the carjacking statute. Because there is a significant difference in the wording between the carjacking and narcotics statutes and because *Jones* relied on the constitutional doubt doctrine in considering a particular federal statute, "*Jones* [was] simply too thin a reed upon which to hang a wholesale abandonment of ... pre-*Jones* precedent." *Rios–Quintero,* 204 F.3d at 219.

## IV.

### A.

The Supreme Court in *Jones* foreshadowed its next step when it stated:

> (1) be fined under this title or imprisoned not more than 15 years, or both,
> (2) if serious bodily injury ... results, be fined under this title or imprisoned not more than 25 years, or both, and
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.
> 18 U.S.C. § 2119.

**10.** 18 U.S.C. § 2119 provides:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

But even if we assume that the question we raise will someday be followed by the answer the dissenters seem to fear, that answer would in no way hinder the States (or the National Government) from choosing to pursue policies aimed at rationalizing sentencing practices. If the constitutional concern we have expressed should lead to a rule requiring jury determination of facts that raise a sentencing ceiling, that rule would in no way constrain legislative authority to identify facts relevant to punishment or to establish fixed penalties. The constitutional guarantees that prompt our interpretation bear solely on the procedures by which the facts that raise the possible penalty are to be found, that is, what notice must be given, who must find the facts, and what burden must be satisfied to demonstrate them.

*Jones*, 526 U.S. at 252 n. 11, 119 S.Ct. 1215.

In *Apprendi*, the Supreme Court took that next step when it held that "any fact [other than a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, —— U.S. ——, ——, 120 S.Ct. 2348, 2362–63. The defendant in that case fired several shots into the home of an African American family that had recently moved into an all white neighborhood in New Jersey. He pleaded guilty to two counts of second-degree possession of a firearm for an unlawful purpose and one count of third-degree unlawful possession of an antipersonnel bomb. Under New Jersey state law, the two second-degree offenses carry a penalty range of five to ten years; the third-degree offense carries a penalty range of three to five years. A separate New Jersey "hate crimes" statute provided for an increased sentence if the trial judge found by a preponderance of the evidence that the defendant committed the crime with an impermissibly biased motive. The hate crimes statute authorized an increased sentence of between ten and twenty years on a second-degree offense.

The prosecutor sought the increased sentence even though the original indictment was devoid of any reference to the hate crimes statute. After finding by a preponderance of the evidence that Apprendi was motivated by racial bias, the judge sentenced him to twelve years imprisonment on one of the second-degree offenses and to shorter concurrent sentences on the other two counts. Without the hate crimes statute, the judge was only authorized to sentence him to a maximum of ten years on each of the second-degree offenses to which he pleaded.

The Court declared New Jersey's hate crimes statute unconstitutional on the twin grounds that it allowed a judge, not a jury, to make the factual finding that a crime was motivated by bias and that it did not require proof of that finding beyond a reasonable doubt. *Id.* The Court began with a historical overview of the important role the jury plays in guarding against governmental oppression and tyranny and the significance of the companion right to have the jury verdict based on a higher standard of proof in criminal cases. *Id.* at 2356. Those rights, protected by the due process clause and the Sixth Amendment right to jury trial, "[t]aken together ... indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Id.* at 2355–56 (quoting *United States v. Gaudin*, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)).

The Court next discussed the novelty of the distinction between an element of an offense and a sentencing factor. *Id.* at 2359. That distinction simply did not exist until recent case-law, and judges historically had very little explicit discretion in sentencing except to take into consideration factors that affected a judgment within a range prescribed by statute. *Id.*

The historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided

highlight the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.

*Id.* The Court also noted that due process and associated jury protections are not simply concerned with a defendant's guilt or innocence, but also extend to the length of his sentence. *Id.* at 2359–60. It recognized that every sentence of incarceration imposes a corresponding social stigma that deserves the constitutional guarantees that attach to any criminal prosecution. *Id.*

The Court distinguished its earlier precedent in *McMillan* and *Almendarez–Torres.* It limited *McMillan* to the narrow holding that judges may determine facts that impose or increase a mandatory minimum penalty within a preexisting statutory range, but that do not increase a statutory maximum for the offense established by the jury's verdict. *Id.* at 2361 n. 13.[11] "Even though it is arguable that *Almendarez–Torres* was incorrectly decided," *id.* at 2362, that case was limited as "an exceptional departure" due to the unique nature of recidivism as a factor taken into account by judges during sentencing. *Id.* at 2361–62.

### B.

Although arising in the context of a state hate crimes statute, this court finds that the sweeping pronouncements in *Apprendi* apply with equal force to federal narcotics prosecutions under 21 U.S.C. § 841.[12] *Apprendi* rejects attaching any

significance to the separation of the "Penalties" in section 841(b) from the "Unlawful Acts" in section 841(a), which courts relied on heavily in holding that a drug amount is a sentencing factor. *See, e.g., Foye,* 68 F.Supp.2d at 733–34. In light of *Apprendi,* this separation is nothing more than an artificial formalism.

The legislative intent behind the New Jersey hate crimes statute was even more explicit than the congressional intent behind section 841 because the New Jersey statute labeled the bias factor as a "sentence enhancement" and explicitly left the finding to the trial judge. The Court stated that "merely because the state legislature placed its hate crime sentence 'enhancer' 'within the sentencing provisions' of the criminal code 'does not mean that the finding of a biased purpose to intimidate is not an essential element of the offense.'" *Apprendi,* —— U.S. ——, ——, 120 S.Ct. 2348, 2365–66. Congress cannot curtail due process and Sixth Amendment rights by simply placing artificial labels on statutory aggravating facts. *See Rigsby,* 943 F.2d at 641 ("Legislative bodies do not have the unfettered discretion to lessen the government's burden of proof of a criminal charge simply by characterizing a factor as a penalty consideration rather than an element of the offense."). "Despite what appears to us the clear 'elemental' nature of the factor here, the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"

---

11. The Court expressed serious doubt regarding the continuing viability of *McMillan,* "reserv[ing] for another day the question whether stare decisis considerations preclude reconsideration of its narrower holding." *Id.* at 2361. In his concurring opinion, Justice Thomas argued that the constitutional protections should be extended to mandatory minimum sentences because it "entitles the government to more than it would otherwise be entitled," based solely on the indictment

and verdict of the jury. *Id.* at 2379 (Thomas, J., concurring).

12. It is noteworthy that three days after *Apprendi* was decided, the Supreme Court vacated and remanded a recent Tenth Circuit decision concluding that section 841(b)(1) merely sets forth sentencing factors, not elements of the offense, for further consideration in light of *Apprendi. See Jones v. United States,* —— U.S. ——, 120 S.Ct. 2739, 147 L.Ed.2d 1002 (2000).

*Apprendi,* —— U.S. ——, ——, 120 S.Ct. 2348, 2365.

█ Casting aside the artificial formalism and looking at the real effect of a drug amount finding, 21 U.S.C. § 841 sets forth separate offenses, rather than one offense with different penalties. The statute generally proscribes the manufacture and distribution of illicit drugs, but graduates the general offense into separate offenses with varying levels of severity.

[I]f the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact—of whatever sort ... the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an element of the aggravating crime.

*Id.* at 2368–69 (Thomas, J., concurring). In essence, the larger drug amounts constitute aggravated offenses of a basic section 841 violation, and that statutory fact constitutes the distinguishing element of the aggravating crime. *See generally Gibbs,* 813 F.2d at 604 (Aldisert, J., dissenting) (stating that the amount of drugs involved in the offense was the "fulcrum upon which turns the degree of opprobrium attached to the crime, and the concomitant degree of punishment available").

Supporting the conclusion that section 841 sets forth separate offenses is the fact that the felony grade classification is different for each subsection of section 841(b)(1). 18 U.S.C. § 3559 provides that an offense not specifically classified with a felony or misdemeanor grade is classified according to the maximum term of imprisonment. A violation of subsection 841(b)(1)(A) is a class A felony. *See* 18 U.S.C. § 3559(a) (defining class A felony as an offense with a maximum term of life imprisonment). Violations of subsections 841(b)(1)(B) and (b)(1)(C) result in class B and C felonies, respectively. *See id.* §§ 3559(b), (c). In *McMillan,* the Court stated that if a statutory fact is a "tail which wags the dog of the crime," then the statutory fact has exceeded the scope of a typical sentencing factor and is more appropriately deemed an element of the offense. *McMillan,* 477 U.S. at 88, 106 S.Ct. 2411. Drug amounts determine the substantive aggravating crime, and the corresponding felony grade classification is indeterminable until the drug amount is affirmatively found. Clearly then, the statutory aggravating fact of drug amounts is a "tail which wags the dog of the substantive offense."

As the Court in *Apprendi* noted, in addition to the obvious restriction to a defendant's liberty, there is also a social stigma that attaches to increased penalties. "The degree of criminal culpability the legislature chooses to associate with particular, factually distinct conduct has significant implications both for a defendant's very liberty, and for the heightened stigma associated with an offense the legislature has selected as worthy of greater punishment." *Apprendi,* —— U.S. ——, ——, 120 S.Ct. 2348, 2365. There is a significant difference between a small-time drug user who engages in occasional drug distributions to illegally supplement income and drug dealers who direct and organize deals that are large-scale in both amount and geographic scope. Of course, the conduct is equally unlawful on both defendants' part, but the social stigma, in addition to the penalties, that attaches to the drug king-pin is heightened over the occasional drug distributor. The criminal law "is concerned not only with guilt or innocence in the abstract but also with the degree of criminal culpability" assessed. *Mullaney v. Wilbur,* 421 U.S. 684, 697–98, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (invalidating a state statute that presumed that a defendant charged with a homicide possessed the "malice aforethought" necessary to constitute murder).

*Apprendi*'s holding, in conjunction with the Court's earlier teachings in *Jones,* leads to the inescapable conclusion that the drug amount in a section 841 offense is a "fact that increases the penalty for a crime beyond the prescribed statutory maxi-

mum." *Apprendi,* —— U.S. ——, ——, 120 S.Ct. 2348, 2362–63. The due process clause and the Sixth Amendment require that drug amounts be treated as an element of a section 841 offense, not a sentencing factor. In sum, this court holds that in a prosecution under 21 U.S.C. § 841, or in a prosecution for conspiracy to commit or attempt to commit a violation of that statute, the government must, in order to seek increased statutory penalties, allege the drug amount in the indictment, submit that fact to the jury, and prove the existence of the fact beyond a reasonable doubt.

### C.

In this case, the jury found that Henderson conspired to manufacture and distribute methamphetamine and to distribute marijuana and attempted to possess with intent to distribute methamphetamine. The wording of section 841(b)(1)(C) makes clear that, unless subparagraphs (A) or (B) apply because the defendant's offense exceeded a statutory amount of drugs, the penalty must not exceed twenty years imprisonment on each of the grouped counts.[13] 21 U.S.C. § 841(b)(1)(C). As discussed above, *Apprendi* prohibits this court from usurping the role of the jury and determining, on its own by a preponderance of the evidence, a drug amount that increases the defendant's statutory maximum penalty. Because the indictment did not charge, nor did the jury find, an amount of drugs, this court was confined within the twenty years provided by section 841(b)(1)(C) when sentencing Henderson on the grouped counts.

This court believes that, in light of *Apprendi,* federal prosecutors will allege a specific drug amount in the indictment and prove that fact to a jury even when the government is not seeking increased statutory penalties. This practice will significantly aid courts in finding the relevant conduct amount and determining the appropriate sentencing guideline range. Moreover, providing concrete information in the indictment is consistent with the Sixth Amendment right to notice of the charges of which one is accused. Nonetheless, failure to allege the specific drug amount in the indictment is not fatal and does not require dismissal of the criminal action, but instead merely limits punishment to the lowest statutory range provided by the statute. *See generally United States v. Ubakanma,* 215 F.3d 421, 2000 WL 749397 (4th Cir. June 12, 2000) (finding that the statutory aggravating fact, "affects a financial institution," in 18 U.S.C. § 3413 is an element of the offense, and vacating sentence and remanding to the district court for sentence pursuant to lesser felony provisions because the statutory aggravating circumstance was not alleged in the indictment); *see also United States v. Jones,* 172 F.3d 1115 (9th Cir. 1999) (on remand from the Supreme Court decision declaring that the federal carjacking statute sets forth three separate offenses, remanding to the district court for resentencing). Even in the absence of a specific drug amount finding, the jury's verdict authorizes a sentence pursuant to section 841(b)(1)(C) because application of

---

**13.** Section 841(b)(1)(D) provides for lesser penalties when the amount of certain drugs, including marijuana, is less than a certain statutory amount, or if the offense involves a schedule III controlled substance. It is likely that a defendant who distributes marijuana in violation of 21 U.S.C. § 841(a)(1) is limited to a statutory maximum of five years under section 841(b)(1)(D) unless a marijuana amount is provided in the indictment and proven to a jury. Indeed, it is arguable that a defendant who distributed marijuana is limited to a statutory maximum of one year imprisonment. *See* 21 U.S.C. § 841(b)(4) (referring to the penalties provided in 21 U.S.C. § 844 for defendants who distribute a "small amount" of marijuana for no remuneration). That result would be consistent with *Apprendi*'s holding that any fact (other than prior conviction) that increases a statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. This court need not address the issue at this time, however, because the jury's finding on count one specifically states that the defendant is guilty of conspiracy to distribute both methamphetamine and marijuana.

that subparagraph is not contingent on a specific drug amount finding. *See* 21 U.S.C. § 841(b)(1)(C).

### D.

To the extent that Henderson argues *Apprendi* also prohibits the court from determining the amount of drugs for relevant conduct purposes, that argument is rejected. The main dissenting opinion in *Apprendi* argued that the decision threatens "all determinate-sentencing schemes in which the length of a defendant's sentence within the statutory range turns on specific factual determinations." *Apprendi*, — U.S. —, —, 120 S.Ct. 2348, 2391 (O'Connor, J., dissenting) (citing the federal sentencing guidelines as the primary example of determinate-sentencing schemes threatened by the majority opinion in *Apprendi*). *Apprendi*, however, does not paint with so broad a brush as to cover determinate-sentencing schemes such as the federal sentencing guidelines.

As the Court makes explicitly clear:

We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case.

*Id.* at 2358. *Apprendi* by its very terms is expressly limited to those facts that increase a penalty beyond a *statutory* maximum. *Id.* at 2362–63 ("[A]ny fact that increases the penalty for a crime beyond the prescribed *statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)). For example, increasing the maximum penalty for a drug dealer from a maximum of twenty years to a maximum of life imprisonment based on a judge's finding, by a preponderance of the evidence, that the defendant dealt more than fifty grams of methamphetamine is now prohibited by *Apprendi. See* 21 U.S.C. §§ 841(b)(1)(A) and (b)(1)(C). Nothing in the *Apprendi* opinion, however, leads to the conclusion that a judge cannot determine facts that affect the defendant's sentence within the boundaries of a range with a maximum of twenty years as explicitly provided by 21 U.S.C. § 841(b)(1)(C), the baseline section. That type of determinate-sentencing is still within a judge's discretion and is the proper definition of the term "sentencing factor" first coined in *McMillan.*

### V.

Although this court was limited to statutory maximum penalties of twenty years on each of the two drug counts and the money laundering count, Henderson was sentenced to a term of 35 years. Generally, grouped counts are to be served concurrently. U.S.S.G. § 5G1.2(d), however, provides that "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." Counts one, two, and three each provide for a maximum of twenty years, or 240 months, imprisonment, the highest statutory maximum in this case. The total punishment for the group consisting of counts one, two, and three is 360 months.[14] Applying U.S.S.G. § 5G1.2(d), the court imposed terms of imprisonment of 240 months on each of counts one, two, and three, but found that the 240 month sentence on count two must run consecutive to the 240 month sentence imposed on count one to the extent necessary to produce a combined sentence equal to the total punishment of 360 months. The court therefore determined that 120

---

**14.** Pursuant to U.S.S.G. § 5G1.2(a) and commentary to that guideline, the mandatory minimum five year sentence for count four is to be considered independently of counts one, two, and three. The court therefore did not consider the five year minimum sentence for count four in calculating the total punishment for purposes of U.S.S.G. § 5G1.2(d).

months of the 240 month sentence imposed on count two will run consecutive to the 240 months imposed on count one. The remaining 120 months of the 240 month sentence on count two, and the entire 240 month sentence for count three, will run concurrent to the sentence for count one.

The court imposed the mandatory minimum term of imprisonment of five years for count four. This five year term is required to run consecutive to the terms of imprisonment imposed for counts one, two, and three, resulting in a total actual imprisonment term of 420 months, or 35 years.

## VI.

*Apprendi* prohibits imposing increased statutory penalties pursuant to 21 U.S.C. § 841 unless the specific drug amount is charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt. Under the United States Sentencing Guidelines, however, this court sentenced Henderson to an actual imprisonment term of 420 months, or 35 years.

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.